[No. B215110. Second Dist., Div. Eight. Dec. 16, 2010.]

JOHN FUTRELL et al., Plaintiffs and Appellants, v.
PAYDAY CALIFORNIA, INC., et al., Defendants and Respondents.

1422

COUNSEL

Harris & Ruble, Alan Harris and Matthew E. Kavanaugh for Plaintiffs and Appellants.

Rosen Saba and Ryan D. Saba for Defendants and Respondents.

OPINION

**BIGELOW, P. J.**—This appeal arises from a class action alleging violations of sections of the Labor Code and the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) (FLSA) by a payroll processing company operating in the local television commercial production industry. Plaintiffs' primary claim is that the payroll company violated various Labor Code and FLSA wage statutes, including Labor Code sections 510 and 1194 (authorizing a private right of action),[1] by failing to pay statutorily required overtime compensation rates to plaintiffs. In the context of a motion for summary adjudication of issues (SAI), the trial court ruled the payroll company had not been plaintiffs' "employer." The court thereafter entered judgment in favor of the payroll company, and plaintiffs filed the appeal that comes before us today.

While plaintiffs' appeal was pending in our court, the Supreme Court decided *Martinez v. Combs* (2010) 49 Cal.4th 35 [109 Cal.Rptr.3d 514, 231 P.3d 259] (*Martinez*), cementing at least three employment principles in place which are relevant to the appeal. First, "no generally applicable rule of law imposes on anyone other than an *employer* a duty to pay wages." (*Id.* at p. 49, italics added.) Second, a wage order adopted by the Industrial Welfare Commission (IWC) for a particular occupation, trade or industry, "and not the common law, properly defines the employment relationship in [an] action under section 1194." (*Id.* at p. 62; see *id.* at pp. 52–66.) Third, wage orders issued by the IWC "do not incorporate the federal definition of employment" under the FLSA. (*Martinez*, at p. 52; see *id.* at pp. 66–68.) Because our review of the trial court's ruling on the motion for SAI is de novo (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 114 [84 Cal.Rptr.3d 734, 194 P.3d 1026]), we now apply *Martinez*. Having done so, and having separately considered federal case law interpreting the FLSA, we affirm the judgment in favor of the payroll company.

---

[1] All further section references are to the Labor Code except as otherwise noted.

## FACTS

*General Background*

At all relevant times, Reactor Films, Inc. (a defendant, but not party to this appeal), produced television commercials for different companies, including, among others, JCPenney and Pizza Hut. Reactor did not maintain a staff of full-time production employees; it hired "freelance crewmembers" as needed to complete its production activities.

Payday California, Inc.[2] (defendant and respondent), provides payroll processing and related services for companies that produce television commercials. From time to time, Reactor contracted with Payday to provide payroll services. The record contains substantial evidence showing that Reactor and Payday commonly entered into written contracts, perhaps in connection with each particular television commercial production. During discovery in the current case, John Futrell (plaintiff and appellant) requested production of the contracts between Reactor and Payday, but Payday claimed it did not have the contracts, and that they might have been destroyed. Payday produced copies of "form" contracts which it regularly used for its other production company clients. Those form contracts included provisions identifying Payday as the "employer of temporary employees under the following conditions: Payday . . . becomes the employer and handles all payment to employees, including but not limited to union, pension, and welfare reports and contributions, employer's share of payroll taxes, and any and all payments and costs and charges that are based on or attributable to the payroll for work required to be performed under [motion picture industry] union contracts . . . ."

It seems fair to say, as the trial court did, that Reactor had "outsourced" its payroll department. These payroll processing practices are apparently common in the television commercial production industry; Payday provides its payroll services for "roughly 100 production company clients that produce television commercials."

In June 2002, Futrell worked in a private police capacity providing traffic and crowd control services for an Old Spice commercial produced by Reactor.[3] In his pleadings and in his briefs both in the trial court and on

---

[2] Our references to "Payday" include Payday California, Inc., Screaming Eagle, Inc., Payday LA, Inc., Payday Management, Inc., and PDSI, Inc.

[3] Our references to Futrell include all plaintiff classmembers included in the trial court's order certifying the following state law class: "All natural persons . . . who worked to assist in crowd and traffic control [on television commercials produced by Reactor] from February 9, 2002 through April 30, 2008, and received one or more paychecks from Payday California,

appeal Futrell regularly states that this type of work is often provided by off-duty and/or retired police officers. In June 2004, Futrell worked on a JCPenney commercial produced by Reactor. In May 2006, Futrell worked on a Pizza Hut commercial produced by Reactor.

*The Litigation*

In 2006, Futrell commenced a class action against Reactor and Payday on behalf of himself and others who provided traffic and crowd control services. In January 2007, Futrell filed his operative second amended complaint, alleging seven causes of action respectively: violation of Labor Code sections 510 and 1194 (overtime pay); violation of Labor Code section 203 (prompt payment of wages at the end of employment); violation of Labor Code section 226 (adequacy of pay stubs); violation of Business and Professions Code section 17200 based on predicate violations of the Labor Code; violation of title 29 United States Code section 206 (federal minimum wage); violation of title 29 United States Code section 207 (federal overtime pay for workweek); and, finally, seeking relief, including attorney fees, pursuant to Labor Code section 2699 (private attorney general right of action for violations of the Lab. Code).

Futrell's complaint alleged that he worked on several television commercial productions shot on locations in Los Angeles County, providing traffic and crowd control services, and other related safety functions. Futrell alleged Reactor and Payday acted as his "joint employers" during the course of these productions. He further alleged Reactor and Payday failed to pay statutorily required double-time wages when he worked over 12 hours in a day, failed to pay him within statutorily prescribed time periods upon the termination of employment, and failed to provide pay stubs complying with statutory requirements.

More specifically, Futrell alleged he worked 14 hours on one day's shoot and 16.5 hours on a second day's shoot on Reactor's Old Spice commercial production in June 2002, and that he should have been paid at his base rate for eight hours, then at a rate of one and one-half times his base rate for the next four hours, and then at a rate of two times his base rate for the time he worked over 12 hours. In other words, Futrell alleged he should have been paid two times his base for the final two hours he worked on the first day's

---

Inc., Payday LA, Inc., Screaming Eagle, Inc., and/or PDSI, Inc." The court entered a similar class certification order for Futrell's federal claims.

shoot, and for the final 4.5 hours he worked on the second day's shoot. Instead, alleged Futrell, all of the time he worked over eight hours was unlawfully compensated at an overtime rate of one and one-half times his base rate. Futrell alleged he was underpaid by a total of $126.39 as a result of the hours unlawfully compensated at one and one-half times his base rate which should have been compensated at a rate of two times his base rate; he alleged the same type of underpayment of overtime wages occurred on Reactor's JCPenney commercial production in June 2004, and on Reactor's Pizza Hut commercial production in May 2006 (though the calculated figures are different).

*The Motion for SAI*

In July 2008, Payday filed a motion for "an order granting summary adjudication of this entire action in [its] favor" on the ground that it had not been Futrell's "employer." Payday supported its motion with a declaration from its principal, Ron Renaud, and evidence obtained from discovery, including Futrell's deposition testimony. Between July and December 2008, Payday and Futrell filed arguments, evidence and evidentiary objections on the issue of whether Payday had been Futrell's employer. Payday's evidence in support of its motion for SAI showed that Payday did not hire or fire Futrell or have the authority to do so. Further, the evidence showed Payday did not control Futrell's work, did not set or negotiate his wages, did not assign or supervise his work, did not determine his hours or conditions of employment, and did not set his work schedule. In addition, Payday presented evidence that it never entered into a written or oral employment contract with Futrell.

Futrell filed his opposition to the motion for SAI in November 2008. Futrell supported his opposition with evidence developed during discovery, including deposition testimony from Joyce Gallagher, Payday's senior payroll coordinator, and Ron Renaud, Payday's principal. Futrell submitted his own declaration attesting he "understood" he was a Payday employee because of the payroll documents that Payday processed, and because representatives of Payday made statements to that effect.[4] Futrell also submitted a declaration from an industry expert, Dean Bray, who testified to his experience in

---

[4] Futrell also proffered this fact: "Those persons who work on [Reactor's] productions are employed by Payday and then leased back to the production company." Joyce Gallagher's deposition testimony is cited as supporting evidence. Although it is correct that she used the term "leased back" in her testimony, the unedited, remaining parts of her testimony unmistakably establish that she was not actually describing a "leaseback" transaction between Payday and Reactor, but rather, was using her own personal term of art, without any legal meaning. Gallagher's testimony established Reactor hired the production workers, who worked under Reactor's directions, and Payday's role was preparing and issuing paychecks and W-2's, and related documents.

connection with the International Alliance of Theatrical Stage Employees union, and who offered his opinion that, "[i]n the motion picture industry, it is quite common for the production company to work with another firm that actually employs the crewmembers. This other firm is generally referred to as the 'Payroll Company,' despite the fact that it operates in a fashion that is quite different from a traditional payroll company such as ADP."

Futrell's evidence showed he completed timecards, employee information sheets, employment eligibility verifications, and W-4 employee withholding certificates provided by Payday, and that Payday collected the information about the hours he worked from the timecards and placed the information into Payday's computer payroll system to generate Futrell's paychecks. The pay stubs provided with Futrell's paychecks identified Futrell as the "employee" and identified Payday as the "employer of record." Payday furnished W-2 forms which identified Payday as Futrell's "employer." Futrell also presented evidence that Payday was considered by the Internal Revenue Service as an employer of record for income tax and unemployment insurance purposes. In addition, the evidence showed that the funds accessed for Futrell's paychecks were drawn on Payday's accounts and that Payday paid premiums for workers' compensation insurance and unemployment insurance covering Futrell. Don McVeigh, an expert in "the insurance industry, including matters involving workers' compensation insurance," submitted a declaration in which he stated that only an "employer" can purchase workers' compensation insurance. Finally, Futrell showed the general practices at Reactor's television commercial productions included a freelance production supervisor working on site "to liaise" with Payday.

On December 15, 2008, the parties argued the "employer or non-employer" issue to the trial court, and the court took the matter under submission. On January 20, 2009, the trial court issued an order granting Payday's motion for SAI. In granting Payday's motion, the court, without benefit of *Martinez, supra,* 49 Cal.4th 35, applied the common law test of employment (see, e.g., *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350–351 [256 Cal.Rptr. 543, 769 P.2d 399] (*Borello*)), and concluded plaintiffs' evidence did not "bear on the critical issue" under that test, namely, "whether the payroll company defendants hire, terminate or control the activities of the officers at the film sites. . . ." The court reasoned an employer-employee relationship imposes burdensome payroll recordkeeping and reporting responsibilities on the employer, and an employer is allowed to contract out those responsibilities. Further, a payroll company does not make itself an employer by contracting to perform the recordkeeping responsibilities for an employer, including listing itself as an employer on reports to government entities, purchasing mandated workers' compensation insurance for the job, and identifying itself as the payor on pay stubs received by a worker. The trial court found those actions were factors in determining

whether the payroll company was an employer under the common law test, but they were not dispositive. The court ruled, in Futrell's case, those factors were "subordinated to the decision-making authority of the production companies to direct a film shoot and to hire whom they want[ed] to maintain security and traffic control at the site. . . ."

On January 29, 2009, the trial court incorporated its ruling on Payday's motion for SAI into a judgment in favor of Payday.

## DISCUSSION

### I. *Summary Judgment*

Futrell contends the judgment in favor of Payday must be reversed because the evidence presented in connection with the motion for SAI demonstrates Payday was his employer. We disagree.

Before examining Futrell's arguments on appeal, we find it helpful to lay down a roadmap to guide us through the issues. First, the primary issue in this case is whether or not Payday was Futrell's employer for purposes of sections 203, 226, 510, and 1194—collectively the Labor Code wage statutes—and for purposes of the FLSA. In other words, the question presented by the current case is whether Payday was an employer who may now be held liable for Futrell's allegedly unpaid wages, and for any consequential fees and fines. Whether or not Payday acted as Futrell's employer for other purposes, e.g., for income and payroll tax reporting and withholding requirements, may be an issue for another day, in another case, but it is relevant for purposes of the current case only insofar as those activities may be a factor for consideration in determining whether Payday was Futrell's employer for purposes of the Labor Code wage statutes and the FLSA.

Second, because Futrell's current case comes before us in the procedural context of Payday's motion for SAI that it was not Futrell's employer for purposes of the Labor Code wage statutes and the FLSA, our task on appeal is to determine whether Futrell, in opposing Payday's motion for SAI, presented enough evidence to create a triable issue of fact regarding Payday's status as his employer. For this reason, we find Futrell has raised the bar too high on appeal by arguing the evidence "demonstrates" Payday was his employer—he need only persuade us he presented evidence that created a triable issue of fact concerning Payday's status as his employer.

■ With this roadmap in place, we now turn to Futrell's arguments on appeal. *Martinez* governs our determination of the issues in the current case. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) *Martinez* teaches us that, in actions under section 1194 to recover unpaid wages, an IWC wage order governing a subject industry defines the employment relationship, and thus who may be held liable—as an employer—for unpaid wages. In *Martinez*, the Supreme Court was called upon to examine "Wage Order No. 14-2001" regulating our state's "Agricultural Occupations." (See Cal. Code Regs., tit. 8, § 11140.)

■ The court interpreted Wage Order No. 14-2001's definition of employment to embody three alternative definitions. "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Martinez, supra*, 49 Cal.4th at p. 64; see *id.* at pp. 52–68.) At the same time, the court further interpreted Wage Order No. 14-2001's definition of employment not to incorporate the federal definition of employment under the FLSA. (*Martinez, supra*, 49 Cal.4th at p. 64; see *id.* at pp. 52–68.)

The IWC has adopted "Wage Order No. 12-2001" regulating wages, hours and working conditions in the "Motion Picture Industry." (Cal. Code Regs., tit. 8, § 11120.)[5] Because Wage Order No. 12-2001 and Wage Order No. 14-2001 use identical language to define the terms "employ," "employee" and "employer," the Supreme Court's three alternative definitions of employment articulated in *Martinez* are equally applicable to the relationship between Futrell and Payday. In other words, Payday acted as Futrell's employer in the event it either (a) exercised control over his wages, hours or working conditions; *or* (b) allowed him to suffer work or permitted him to work; *or* (c) engaged him, creating a common law employment relationship. (*Martinez, supra*, 49 Cal.4th at p. 64; see *id.* at pp. 52–68.)

■ The FLSA defines an "employee" as "any individual employed by an employer," and defines an "employer" to mean "any person [or entity] acting directly or indirectly in the interest of an employer in relation to an employee." (29 U.S.C. § 203(d), (e)(1).) Needless to say, these are general statutory definitions. Accordingly, federal case law is needed for more specific guidance. The federal courts have interpreted these statutory definitions to mean two separate persons and/or entities may be a worker's joint

---

[5] Wage Order No. 12-2001 defines "Motion Picture Industry" to mean "any industry, business or establishment operated for the purpose of motion picture or television film production, or primarily allied with theatrical or television, motion picture productions, including but not limited to motion pictures for entertainment, commercial, religious, or educational purposes, whether made by film, tape, or otherwise." (Cal. Code Regs., tit. 8, § 11120, subd. (2)(K).) We are satisfied that Reactor operated in the motion picture industry within the meaning of this definition.

employer where a "horizontal" employment structure exists, i.e., when the employment structure involves shared employees, administrators, supervisors, administrative services, and schedulers. (*Chao v. A-One Medical Services, Inc.* (9th Cir. 2003) 346 F.3d 908, 912–913.) In contrast, an employer-employee relationship does not exist where a "vertical" relationship exists in which one company has contracted for workers who are directly employed by an intermediary company. (*Id.* at p. 917.) ██ An "economic reality test" applies in determining whether a person or entity is an "employer" for purposes of the FLSA. Under this test, a court must consider the totality of the circumstances of the relationship, including such factors as whether the alleged employer had the authority to hire and fire the employee, whether the alleged employer supervised and controlled the employee's work schedules and the conditions of his or her employment, and whether the alleged employer determined the rate and method of payment, and maintained employment records. (*Bonnette v. California Health & Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1469–1470.)

We must separately examine whether Payday acted as Futrell's "employer" under the Labor Code wage statutes and the FLSA. (*Martinez, supra,* 49 Cal.4th at pp. 52–68.)

A. *California Law*

██ Futrell contends the trial court erred in finding that Payday was not his employer because the Division of Labor Standards Enforcement (DLSE) has a long history of "treat[ing] 'payroll companies' as employers." Although Futrell is correct that our state courts afford considerable deference to an interpretation of a statute by an administrative agency charged with its administration (see, e.g., *Rizzo v. Board of Trustees* (1994) 27 Cal.App.4th 853, 861 [32 Cal.Rptr.2d 892]), we summarily reject his argument because he has not actually cited us to any DLSE decision treating a payroll company as the employer of the persons to whom it delivers paychecks. To answer the question whether Payday acted as Futrell's employer for purposes of the Labor Code wage statutes, we see no reason to apply any other definition than the *Martinez* definition, unless Futrell can persuade us that there is another reason to find Payday was his employer.

Futrell next argues "an employee may have more than one employer," and Payday was his "joint employer," together with Reactor. Payday was his employer, argues Futrell, because he entered an employment contract with

Payday in "the context of [the] general industry practice" utilized in the world of television commercial production, or "implied by conduct." More specifically, Futrell argues the various payroll documents that passed between him and Payday, e.g., employee information sheets, timecards, and W-4 and W-2 tax forms, establish he and Payday entered an "implied" employment contract. We reject Futrell's argument because the case authorities he cites do not support the proposition that an employer-employee relationship for purposes of the Labor Code wage statutes may be based on any one particular factor, e.g., payroll and tax-related documents. The issue in *Meier v. Paul X. Smith Corp.* (1962) 205 Cal.App.2d 207 [22 Cal.Rptr. 758], was whether multiple documents related to a sales transaction should have been construed together as one contract; in *Penn Sec. Life Ins. Co. v. Rising* (1976) 62 Cal.App.3d 302 [133 Cal.Rptr. 59], the issue was whether the parties entered a valid "credit life insurance" policy; in *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103 [284 Cal.Rptr. 367], a loan transaction was at issue. We reiterate: in cases involving the issue of whether an employer-employee relationship existed for purposes of the Labor Code wage statutes, we will apply the *Martinez* definition.

Finally, we reject Futrell's argument that Payday acted as his employer because it "performed functions that only employers are permitted to perform." To the extent the federal laws and regulations cited by Futrell are relevant to the question of who is an "employer," they are relevant for the income tax and payroll tax purposes of the federal government (and, we are willing to accept, for state taxes purposes as well), and do not include language suggesting an employer for such purposes is also an employer for the purposes of the Labor Code wage statutes. Once again, in a case involving the issue whether an employer-employee relationship existed for purposes of the Labor Code wage statutes, we will apply the *Martinez* definition. We turn to that task now.

### 1. *Control Over Wages, Hours, or Working Conditions*

There is no evidence in the record showing Payday exercised any control over Futrell's hours or working conditions. Reactor hired Futrell, and arranged and supervised the location shoots. We see nothing in Futrell's briefs on appeal materially disputing Payday lacked control over his hours or working conditions at the jobsite. The production company, Reactor, controlled the shoots. This means the only possible linchpin for finding that Payday was Futrell's employer is whether Payday "exercised control over his wages."

If Payday had merely collected tax information from workers, kept track of timecards, calculated pay and tax withholding, and submitted reports to Reactor detailing such information, leaving it for Reactor to issue paychecks to the workers on its productions, we would have an easy case; Reactor would be the only employer. In our view, the issue in this case then comes down to whether Payday exercised "control over workers' wages" by going beyond handling the ministerial tasks of calculating pay and tax withholding, and by also issuing paychecks, drawn on its own bank account. We think not.

 The parties have not cited any published California case directly addressing whether a payroll company "exercises control over workers' wages" for purposes of determining who is an employer under the Labor Code wage statutes. Writing on a clean slate, we conclude that "control over wages" means that a person or entity has the power or authority to negotiate and set an employee's rate of pay, and not that a person or entity is physically involved in the preparation of an employee's paycheck. This is the only definition that makes sense. The task of preparing payroll, whether done by an internal division or department of an employer, or by an outside vendor of an employer, does not make Payday an employer for purposes of liability for wages under the Labor Code wage statutes. The preparation of payroll is largely a ministerial task, albeit a complex task in today's marketplace. The employer, however, is the party who hires the employee and benefits from the employee's work, and thus it is the employer to whom liability should be affixed for any unpaid wages. The extension of personal liability to the agents of an employer is not reasonably derived from the language and purposes of the Labor Code wage statutes. (Cf. *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1085–1089 [32 Cal.Rptr.3d 483, 116 P.3d 1162] [corporate officers are not individually liable in an action for unpaid overtime under § 1194].)

Our conclusion is consistent with a number of federal cases decided before *Martinez*, but which, in our view, remain analytically sound.[6] *Singh v. 7-Eleven, Inc.* (N.D.Cal., Mar. 8, 2007, No. C-05-04534 RMW) 2007 U.S.Dist. Lexis 16677 involved claims by workers for unpaid overtime wages against a parent company, 7-Eleven, of an independently owned and operated franchisee store. For each pay period, the franchisee sent information about the plaintiffs' hours and rate of pay to 7-Eleven, and 7-Eleven, in turn, prepared payroll checks which it sent back to the franchisee for distribution to the

---

[6] Although not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive. (See, e.g., *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1301 [42 Cal.Rptr.3d 268].)

workers. The federal district court found the evidence of the parent company's payroll activities showed they were a "convenience" offered to the franchisee, and they were not sufficient to show the existence of an employment relationship between the workers and the parent company for purposes of the Labor Code wage statutes. In *Maddock v. KB Homes, Inc.* (C.D.Cal. 2007) 631 F.Supp.2d 1226, the federal district court came to the same conclusion in a case involving a parent company and a subsidiary company. The evidence showed the parent company was involved in payroll processing for itself and for workers at the subsidiary company. The federal district court found this evidence did not show an employment relationship between the parent company and the worker at the subsidiary; the worker's only employer was the subsidiary.

That brings us to the unpublished federal cases directly dealing with the issue of whether a payroll company, and, indeed, Payday itself, was an "employer" for purposes of the Labor Code wage statutes. In *Serino v. Payday California, Inc.* (9th Cir., Apr. 27, 2010, No. 08-56940) 2010 U.S.App. Lexis 8697 (*Serino*), the federal district court dismissed an action for unpaid wages filed by workers on television commercial productions on the ground that "no reasonable trier of fact would find that Payday . . . was the plaintiffs' 'employer.' " The Ninth Circuit Court of Appeals affirmed the district court's ruling in an unpublished memorandum opinion.[7] In *Dianda v. PDEI, Inc.* (9th Cir., Apr. 27, 2010, No. 08-56981) 2010 U.S.App. Lexis 8699 (*Dianda*), the federal district court granted a payroll company's motion for summary judgment in an action for unpaid wages filed by workers on television commercial productions, ruling the payroll company had not been the employer of workers. The Ninth Circuit Court of Appeals affirmed the district court's ruling in an unpublished memorandum opinion.[8]

All of the federal court cases highlight that a payroll company, or any other person or entity that processes payroll, is not an employer because he, she, or it, does not control the hiring, firing, and day-to-day supervision of workers supplying the labor.

---

[7] The *Serino* federal court action appears to have been materially identical to Futrell's current case, except that the plaintiffs in *Serino* were craftsmen and set design and construction workers, rather than crowd and traffic control workers. The plaintiffs' lawyers in *Serino* also represent Futrell in the current action.

[8] The *Dianda* federal court action appears to have been materially identical to Futrell's current case, except that the plaintiffs in *Dianda* worked as "best boys" or "grips" handling production equipment, rather than as crowd and traffic control workers. The plaintiffs' lawyers in *Dianda* also represent Futrell in the current action.

### 2. *To Suffer or Permit to Work*

When the IWC defined "to employ" to include "to suffer or permit to work," it borrowed its definition from the language of early 20th century statutes prohibiting child labor, which were intended to impose liability on the proprietor of a business who knew that child labor was occurring in the business, under a common law employment relationship or not, but failed to prevent it. (*Martinez, supra*, 49 Cal.4th at p. 69.) Stated in other words, the proprietor was liable when he or she knew that child labor was occurring but allowed the child to suffer work, or permitted the child to work. (*Ibid.*) There is no evidence in the current case Payday allowed Futrell to suffer work, or permitted him to work, because there is no evidence showing Payday had the power to either cause him to work or prevent him from working. (*Id.* at p. 70.)

### 3. *Common Law Employment Test*

██ The essence of the common law test of employment is in the "control of details." A number of factors may be considered in evaluating this control, including (1) whether the worker is engaged in a distinct occupation or business; (2) whether, considering the kind of occupation and locality, the work is usually done under the alleged employer's direction or without supervision; (3) the skill required; (4) whether the alleged employer or worker supplies the instrumentalities, tools, and place of work; (5) the length of time the services are to be performed; (6) the method of payment, whether by time or by job; (7) whether the work is part of the alleged employer's regular business; and (8) whether the parties believe they are creating an employer-employee relationship. (See *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10 [64 Cal.Rptr.3d 327] (*Estrada*), citing *Borello, supra*, 48 Cal.3d at pp. 350–351; see also *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 949 [88 Cal.Rptr. 175, 471 P.2d 975]; *Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43–44 [168 P.2d 686]; *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 933 [59 Cal.Rptr.3d 37].) The parties' use of a label to describe their relationship does not control and will be ignored where the evidence of their actual conduct establishes a different relationship exists. (*Estrada, supra*, at p. 11; *Borello, supra*, at p. 349.)

Payday did not direct or supervise Futrell at the production sites. Payday did not provide any tools, or the place of work, to Futrell. Payday did not set Futrell's pay. The crowd and traffic control services performed by Futrell were not for Payday's benefit, nor are such jobs an integral part of Payday's regular business operations. When he was deposed during discovery, and questioned about his authority to make sure that Reactor did not exceed the scope of its shooting permit, Futrell answered, "I have no authority. I'm an employee of the production company. [¶] . . . [I]f I see . . . a violation of the permit, I will make production aware of that violation and, most of the time, they will take care of the problem, and that's as far as it goes." In his declaration in support of his opposition to Payday's motion for SAI, Futrell stated he "understood" that he was an employee of Payday because of the documents that passed between the two, and because representatives from Payday made express comments he was an employee.

■ Futrell's "common law employment" arguments bring us full circle, and, again, we see the factor of the payroll documents as the main focus. For the reasons explained above, we find such documents—as a matter of law—are not sufficient to support a conclusion an employer-employee relationship existed between Futrell and Payday for purposes of the Labor Code wage statutes. Payday did not and could not hire or fire Futrell, nor did Payday have any control over Futrell's work activities. A commonsense understanding of who "employed" Futrell—for purposes of compelling the payment of allegedly unpaid wages—must prevail, and that employer was Reactor.

B. *The FLSA*

■ Futrell's fifth and sixth causes of action under the FLSA allege violations of title 29 of the Unites States Code sections 206 and 207, both of which require an employer-employee relationship. As noted above, federal law applies an "economic reality test" to determine whether persons are employer and employee for purposes of the FLSA. We find as a matter of law Futrell was not an employee under this test. Although the FLSA applies a slightly different test than California law, the predominant factor remains the control an alleged employer exercises over an employee. Incorporating the reasons explained above into the FLSA test, we find Payday was not Futrell's employer for purposes of the FLSA. The economic reality existing between Futrell and Payday is that the latter prepared paychecks for the former for the work he performed on behalf of his actual employer, Reactor.

The federal authorities discussed above in connection with the Labor Code wage statutes (*Dianda, supra*, 2010 U.S.App. Lexis 8699; *Serino, supra*, 2010 U.S.App. Lexis 8697; *Singh v. 7-Eleven, Inc., supra*, 2007 U.S.Dist.

Lexis 16677; *Maddock v. KB Homes, Inc., supra,* 631 F.Supp.2d 1226) also addressed the question of whether a party's payroll activities supported a finding the party was an employer for purposes of the FLSA. In each of the cases, the court ruled that the answer was no.

 Even in the context of payroll and tax reporting and withholding, a federal court has ruled that payroll companies operating in the field of media productions are not the "employer" of production workers. (*Cencast Services v. U.S.* (2004) 62 Fed.Cl. 159.) In *Cencast,* the payroll company entered into arrangements with production employees and placed them with the multiple production companies to work on numerous production projects throughout the year. (*Id.* at p. 162.) Each week, the workers submitted their records of the hours they worked directly to the payroll company. (*Ibid.*) After auditing the time records to ensure compliance with industry standards, the payroll company calculated the workers' pay, subtracted the proper withholdings and then prepared and delivered a paycheck for the net amount to the workers. (*Ibid.*) The paychecks prepared by the payroll company were drawn on the company's accounts and paid from its own funds. (*Ibid.*) The *Cencast* court held these facts did not show the payroll company was the employer of the production workers for purposes of calculating wage bases for Federal Income Contribution Act (FICA) taxes (Social Security and Medicare) and Federal Unemployment Tax Act (FUTA) taxes (unemployment). Basically, the *Cencast* court held the payroll company could not aggregate the wages paid to workers for the purpose of calculating how much FICA and FUTA was due; the wage bases for FICA and FUTA related to the wages paid for work performed by workers for each of the employer production companies.[9]

## II. *Estoppel*

Futrell next contends the judgment in favor of Payday must be reversed because it is estopped from denying its status as his employer. We disagree.

 The elements of estoppel under California law are: (1) a representation or active concealment of material fact; (2) made with knowledge of the facts; (3) to a party who is ignorant of the truth; (4) with the intention that the party act upon it; (5) which induces the party to so act. (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584 [80 Cal.Rptr.3d 83, 187 P.3d 934].) There is no

---

[9] We have not considered a "Technical Advice Memorandum" (TAM) issued by the Internal Revenue Service. Although such TAM's may provide guidance for interpreting revenue statutes and regulations (see, e.g., *Lucky Stores, Inc. and Subsidiaries v. C.I.R.* (9th Cir. 1998) 153 F.3d 964, 966, fn. 4), they are rulings issued to discrete private taxpayers, and, as such, are generally not amenable to judicial notice, and, thus, are not useful, in our view, for broader application (*American Stores Co. v. C.I.R.* (10th Cir. 1999) 170 F.3d 1267, 1271).

estoppel in the present case because, even accepting Futrell's evidence that people affiliated with Payday made statements indicating that he was a Payday employee (see, e.g., *Saelzler v. Advance Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] [the evidence must be construed in the light most favorable to the nonmoving party]), there is no substantial evidence showing that Futrell did any act—e.g., worked on the side apart from his police officer position—only because Payday made such statements.

We reject Futrell's argument that Payday should be estopped from disclaiming its status as an employer because it represented it was an employer in order to purchase workers' compensation insurance. If we were faced with a dispute between Payday and an insurer, Futrell's argument might make sense. However, in the absence of evidence showing Futrell somehow did an act in detrimental reliance on any statement by Payday, there is no room for applying estoppel principles as between Futrell and Payday.

III. *Weighing Evidence*

Last, Futrell contends the judgment in favor of Payday must be reversed because the trial court weighed evidence and/or determined the credibility of evidence when ruling on Payday's motion for SAI. We disagree.

 The record reference provided by Futrell in support of his "weighing" argument points us to the evidence showing Payday prepared a number of different documents, including payroll, tax, and workers' compensation documents, in which Payroll identified itself as Furell's employer. Contrary to Futrell's take on the record, the trial court did not weigh the credibility of this evidence; it accepted the evidence on its face, but found it did not create a triable issue of fact on the employment issue. We see no error. A party's use of a label to describe a relationship with a worker does not create a material dispute over whether an employment relationship existed; such a label will be ignored where the evidence of the parties' actual conduct establishes that a different relationship exists. (*Estrada, supra,* 154 Cal.App.4th at p. 11; *Borello, supra,* 48 Cal.3d at p. 349.)

IV. *Discovery*

Futrell contends the judgment in favor of Payday must be reversed because the company's conduct during discovery "warrants reversal." Futrell argues that he was "not provided any opportunity to obtain full and complete discovery" because Payday failed to turn over copies of its written contracts with Reactor; he argues the trial court should have granted a continuance of Payday's motion for SAI to allow for additional discovery. (See Code Civ. Proc., § 437c, subd. (h).) We find otherwise.

The record reveals the trial court continued the hearing on Payday's motion for SAI twice. So, Futrell's argument is really that the court should have continued the hearing *a third time*. The standard of review for Futrell's continuance claim is abuse of discretion. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715–716 [15 Cal.Rptr.3d 609].) Under this standard, we will not reverse the trial court unless Futrell persuades us the court's decision was beyond the bounds of reason. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) Because the record shows Payday did respond to the trial court's discovery orders as far as it could, we are certain the trial court did not abuse its discretion in granting a further continuance of the motion for SAI.

Futrell's arguments also fail to persuade us the result of the motion for SAI would have been different if only he could have presented the content of the contracts between Reactor and Payday. We accept as true the evidence showing Payday drafted written contracts for its services, which were executed by Reactor, and that those contracts included language to the effect Payday would "become the employer" for purposes of handling all payments to employees, including but not limited to union, pension, and welfare reports and contributions, and employer's share of payroll taxes. For reasons explained above, we find the contracts insufficient to defeat the motion for SAI. Payday prevailed on its motion for SAI because the undisputed evidence established that it did not exercise any control over Futrell's wages, hours and working conditions. Futrell's arguments do not explain how different contractual terms may impact the state of the evidence, and, for that reason, we are not persuaded the trial court exceeded the bounds of reason by addressing the motion for SAI on the record before it. In a tangential vein, we are not persuaded Futrell was prejudiced by the denial of a third continuance. (Cal. Const., art. VI, § 13.)

## V. *The Merits of Futrell's Claims for Unpaid Wages*

Futrell contends the judgment in favor of Payday must be reversed because he is still waiting to be paid the proper amount of unpaid overtime wages. We disagree.

Nothing in the trial court's judgment or in our opinion has any legal bearing on the issue of whether unpaid wages are owed to Futrell. As we noted at the very outset of this opinion, the only issue before us is whether Payday was an employer from whom Futrell may now compel the payment of unpaid wages. Payday was not Futrell's employer. As for his claims for unpaid wages, Futrell's claims lie only against his actual employer, Reactor.

## DISPOSITION

The judgment entered January 29, 2010, is affirmed. Respondents shall recover costs on appeal.

Flier, J., and Grimes, J., concurred.

A petition for a rehearing was denied January 5, 2011, and appellants' petition for review by the Supreme Court was denied March 30, 2011, S190166.