Filed 11/18/14  Mahboubian v. Beyer Law Group CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RAMIN MAHBOUBIAN, et al., | H039415 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-11CV212240) |
| v. | |
| BEYER LAW GROUP, et al., | |
| Defendants and Respondents. | |

Plaintiff and appellant Ramin Mahboubian, on behalf of himself and all other persons similarly situated (hereafter jointly Plaintiffs), filed this action against his former employer, Beyer Law Group (BLG), and Steve Beyer, Michael Ferrazano, and Michael Lee—individual shareholders of BLG—for alleged Labor Code[1] violations related to the non-payment of wages.  BLG and two of the shareholders—Beyer and Lee—demurred to Mahboubian's second amended complaint, arguing that Beyer and Lee could not be held individually liable for the alleged wage claims because they were not Plaintiffs' "employer" as that term is defined in the applicable Industrial Welfare Commission (IWC) wage order and in *Martinez v. Combs* (2010) 49 Cal.4th 35 (*Martinez*).  Plaintiffs

---

[1]  Unless otherwise stated, all further statutory references are to the Labor Code.

appeal the trial court's order sustaining the demurrer to their second amended complaint without leave to amend.[2]

Plaintiffs argue that the trial court erred when it: (1) determined that Beyer and Lee were not "employers" for purposes of Plaintiffs' wage claims under the Labor Code; (2) failed to analyze Beyer's and Lee's liability for violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) separately using the standard applicable to such claims; and (3) sustained the demurrer to the unfair competition claim without leave to amend

We conclude that Beyer and Lee—corporate agents of BLG—could not be held personally liable for Plaintiffs' wage claims as a matter of law. We also hold that Beyer's and Lee's liability under Business and Professions Code section 17200 et seq. is not at issue in this appeal since Plaintiffs did not allege their unfair competition claim against Beyer and Lee. Lastly, we hold that Plaintiffs did not meet their burden of proving how their complaint could be amended. We therefore conclude that the trial court did not err in sustaining the demurrer without leave to amend and will affirm the judgment.

---

[2] Despite the absence of a judgment of dismissal, we will treat the order sustaining the demurrer as appealable. "The general rule of appealability is this: 'An order sustaining a demurrer without leave to amend is not appealable, and an appeal is proper only after entry of a dismissal on such an order.' [Citation.] But 'when the trial court has sustained a demurrer to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' " (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1.) Since the trial court has sustained the demurrer to all of the causes of action against Beyer and Lee without leave to amend, Beyer and Lee are entitled to a judgment of dismissal. "We will accordingly deem the order on the demurrer to incorporate a judgment of dismissal and will review the order." (*Ibid.*)

## FACTS

Our review of the trial court's order sustaining Beyer's and Lee's demurrer without leave to amend accepts as true all factual allegations properly pleaded in the complaint. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.) The summary of the facts is derived from the material allegations in the plaintiffs' operative pleading, the second amended complaint.

The plaintiffs are Mahboubian and similarly situated class members[3] who were employed by defendant BLG, a California limited liability corporation doing business in Cupertino, California. Mahboubian graduated from law school in New York in 1998; he began employment with the law firm of Beyer & Weaver, LLP (Beyer & Weaver) that same year. Mahboubian passed the patent bar in 1999, but has never been licensed as an attorney in any jurisdiction. He worked for Beyer & Weaver as a patent agent, engaging primarily in patent preparation and in the prosecution of patent applications before the United States Patent and Trademark Office. His positions at both Beyer & Weaver and BLG "were not a learned profession as defined under California law," and his work assignments could be done "by individuals who were not admitted to the Patent Bar or any state bar."

Beyer & Weaver entered into an "oral/written" agreement with Mahboubian and the class members under which Plaintiffs were paid based on a percentage of their client billable hours. Plaintiffs were not guaranteed a monthly or weekly salary or minimum compensation by Beyer & Weaver. During Mahboubian's first 10 years with Beyer & Weaver, the partners at the firm included Jeff Weaver, Michael Ferrazano, Steve Beyer, and others. The partners controlled client assignments and the amount of work given to patent agents and attorneys. Mahboubian had a successful career with Beyer & Weaver

---

[3] The record does not contain any evidence that this case has been certified as a class action. The second amended complaint alleges that "the Class is comprised of dozens of persons" who worked for BLG.

3

and his work there consistently garnered praise.  By 2007 and 2008, he regularly earned an average of $20,000 per month.

In March 2008, some of the partners from Beyer & Weaver parted ways with Beyer and Ferrazano to form their own law firm.  Shortly thereafter, Beyer and Ferrazano formed a new law firm—BLG.[4]  Both Beyer and the departing partners sought to have Mahboubian join their respective firms based upon his skills and reputation.  After discussions with Beyer, Mahboubian and the other class members accepted employment with the newly created BLG on or around April 1, 2008.

Continuing the practice established at Beyer & Weaver, BLG paid Plaintiffs based on a percentage of their billable hours with no guaranteed salary and no minimum compensation.  The partners[5] also controlled client assignments.  From April 2008 through June 2010, BLG never provided Plaintiffs a guaranteed salary, and there were many semi-monthly pay periods during which BLG paid Plaintiffs no wages at all.

During this time frame, BLG "provided semi-monthly draws towards earnings." These draws were not guaranteed, were not always provided, were calculated "purely at the discretion of the partners," and were controlled by Beyer, Ferrazano, and Lee.  Beyer, Ferrazano, and Lee "controlled class members' non-payment of a salary" and non-payment of wages during certain periods, "including non-payment of overtime."  While employed by BLG, Plaintiffs regularly worked more than eight hours a day, and more than 40 hours per week without overtime compensation.

BLG and the individually named defendants maintained "a regular accounting of 'negative' draws given to" Plaintiffs.  Negative draws showed amounts that Plaintiffs

---

[4]  Defendant Ferrazano is no longer a shareholder at BLG.  He has not appeared in this action and is not a party to this appeal.  The second amended complaint does not explain when Michael Lee joined BLG.

[5]  BLG is alleged to be a corporation, not a partnership.  But the second amended complaint and the demurrer refer to the owners of the corporation as "partners."  We adopt that description in this opinion.

" 'owed back' " to the firm based on paid draws that exceeded billable earnings. BLG commonly "reduced" amounts paid as "earned billables" when the law firm and the individually named defendants believed BLG "would not, or could not collect from clients on amounts already billed to such clients." BLG and Beyer never provided Plaintiffs a guaranteed weekly or monthly income, and they commonly reduced the draws or wages that were given to Plaintiffs. Beyer made these draw decisions. As a result of these draws, Plaintiffs sometimes did not receive any pay. Beyer, Ferrazano, and Lee— all of whom had control of Plaintiffs' wages—jointly and willfully decided not to pay them. BLG terminated Mahboubian's employment on June 11, 2010.

Plaintiffs' second amended complaint alleged that "each defendant was the agent, servant, joint venturer, partner, and/or employee of each and every one of the other defendants, and was acting within the course and scope of their authority and each defendant ratified, authorized, and approved of the acts of each other defendant." The second amended complaint also alleged that "Any acts or omissions attributed herein to a corporation or other business entity were authorized acts, performed by an authorized representative of said entity, acting within the course and scope of his agency or authority, and were ratified by reasonable representatives of the entity."

## PROCEDURAL HISTORY

### Complaints

In October 2011, Mahboubian filed his original complaint, which alleged ten causes of action against BLG, Beyer, Ferrazano, and Lee. The original complaint contained a first cause of action alleging Labor Code violations by all defendants under section 510 (failure to pay overtime), section 203 (failure to pay wages upon separation), and section 1194 (failure to pay minimum wages and overtime). It contained a second cause of action alleged against BLG only for violating the Unfair Competition Law (Bus.

5

& Prof. Code, § 17200 et seq.) by failing to keep record of all hours worked and by failing to pay wages and overtime as required by the Labor Code.[6]

In August 2012, before any defendant had appeared in the action, Mahboubian filed his first amended complaint, which added the class action allegations. The first amended complaint divided the wage claims into four causes of action that alleged Labor Code violations for failing to (1) pay wages owed upon separation (§§ 201, 202, 203); (2) pay overtime (§§ 510, 1194, 1198); (3) maintain and furnish accurate wage statements and time records (§§ 226, 1174); and (4) pay minimum wages (§ 1197). Like the previous complaint, it contained a fifth cause of action against BLG only for violating the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) by failing to keep accurate wage records and by failing to pay wages as required by the Labor Code.

Plaintiffs filed their second amended complaint on October 19, 2012, before any defendant appeared in the action. This version of the complaint amended the first cause of action to allege the failure to pay (1) the full amount due each week, and (2) wages owed upon separation (§§ 200, 204). It also added a sixth cause of action against BLG only for breach of contract for failure to pay wages.

**Demurrer to Second Amended Complaint**

In November 2012, BLG, Beyer, and Lee (hereafter jointly "Defendants") demurred to the first four causes of action in Plaintiffs' second amended complaint (the only claims alleged against individuals Beyer and Lee). Defendants claimed that (1) Plaintiffs could not state facts sufficient to constitute a cause of action against Beyer and Lee for the alleged Labor Code violations because such claims may be maintained only

---

[6] The complaint also alleged claims for defamation; invasion of privacy (for disclosing private facts relating to Mahboubian's medical treatment and personnel matters at BLG); assault (based on an incident occurring in January 2010 at BLG); violations of the Fair Employment and Housing Act alleging harassment and discrimination based on race, national origin, and color; wrongful termination; tortious interference with a contract Mahboubian had with one of his clients; and breach of contract. These claims were not included in later complaints.

6

against an employer; (2) Beyer and Lee were not employers because the complaint alleged that they acted at all times as agents of the corporation within the scope of their agency; and (3) Beyer and Lee should be dismissed. Defendants argued that Plaintiffs' conclusory allegations that Beyer and Lee had operational "control" at BLG were insufficient to impose personal liability against either Beyer or Lee. Defendants asserted that leave to amend should be denied because Plaintiffs cannot allege facts that would support their claims against Beyer and Lee.

Plaintiffs opposed the demurrer arguing that Beyer and Lee were employers because of the "control" they exercised over the terms and conditions of Plaintiffs' employment, not merely based on the corporate positions they held. And Plaintiffs argued that the Supreme Court's decision in *Martinez*, *supra*, 49 Cal.4th 35 construed the term "employer" broadly to include individuals like Beyer and Lee who exercised control over wages, hours and working conditions.

In reply, Defendants argued that Plaintiffs' reliance on *Martinez* was misplaced because the *Martinez* court twice noted that "the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency." (*Martinez*, *supra*, 49 Cal.4th at p. 66.) Defendants also argued that because all three versions of the complaint described Beyer and Lee as corporate agents, they were not personally liable for any of the claims asserted against them.

**Trial Court Order on Demurrer**

The trial court sustained the demurrer without leave to amend. Citing *Martinez*, the court reasoned that since the second amended complaint "specifically allege[d] that [Beyer and Lee] acted within the course and scope of their authority as agents for [BLG]," Plaintiffs had not stated a cause of action against Beyer and Lee.

7

Plaintiffs argue that the court erred when it (1) determined that Beyer and Lee are not "employers" for purposes of establishing claims against them under the Labor Code; (2) failed to analyze Beyer's and Lee's liability separately using the correct standard for violations under Business & Professional Code section 17200; and (3) sustained Defendants' demurrer without leave to amend.

## I.  Standard of Review

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long settled rules.  'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]"  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; see also *Randi W. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066, 1075.)

## II.  Beyer and Lee Are Not Employers

Plaintiffs argue that the second amended complaint alleges facts showing Beyer and Lee met the IWC Wage Order No. 4-2001 definition of an "employer" because they controlled all aspects of wages due and work assigned to Plaintiffs.  Plaintiffs find support in section 18 of IWC Order No. 4-2001, which defines "employer" as any person who "directly or indirectly, or through an agent or any other person, employs or exercises

8

control over the wages, hours, or working conditions of any person." (Cal. Code. Regs., tit. 8 Sec. 11040, subd. (2)(H); *Martinez*, *supra*, 49 Cal.4th at p. 59.)

The term "employer" as used in the wage statutes and IWC wage orders was first construed by our Supreme Court in *Reynolds v. Bement* (2005) 36 Cal.4th 1075. The plaintiff in that case brought a class action suit alleging violations of sections 510 and 1194, as well as the applicable wage order. (*Ibid.*) The plaintiff sued his former employer (a Delaware corporation), its California subsidiary (also a corporation), and eight individuals who were officers, directors, and shareholders of the Delaware corporation. (*Id.* at pp. 1081-1083.) The individual defendants demurred on the basis that they were not the plaintiff's employers. (*Ibid.*) Since neither section 510 nor section 1194 defined the term "employer," the plaintiff argued that the court should apply the definition in the IWC wage order, which included individuals who exercise control over wages, hours, or working conditions. The plaintiff also argued that corporate control figures—like the individual defendants in that case—qualify as employers. (*Ibid.*)

The California Supreme Court disagreed, reasoning that "the plain language of [the wage order] defining employer does not expressly impose liability under section 1194 on individual corporate agents." (*Reynolds*, *supra*, 36 Cal.4th at p. 1086.) The court applied the common law test of employment and explained that "[u]nder the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages." (*Id.* at p. 1087.) The court concluded that the plaintiff could not state a section 1194 claim against the individual defendants. (*Id.* at pp. 1087-1088.) Furthermore, the court held that although corporate directors may be "jointly liable with the corporation and may be joined as defendants if they personally directed or participated in [] tortious conduct," failing to comply with wage laws is not tortious conduct. (*Id.* at pp. 1089-1090.)

Plaintiffs here argue that *Reynolds* does not apply to Beyer and Lee for two reasons: (1) *Reynolds* applied only the common law definition of an employer, and (2)

9

the rule of individual non-liability derived from *Reynolds* was abrogated in *Martinez*.[7]  In *Martinez,* the Supreme Court revisited the question of who is an employer for the purpose of an action for unpaid minimum wages (§ 1194).  The plaintiffs in *Martinez* were agricultural workers who sued their employer (a grower) and others for unpaid minimum wages and other wage-related claims.  The defendants included two produce merchants, through whom the grower sold strawberries, and an individual who was a field agent for one of the produce merchants.  The grower—the direct employer—had obtained a discharge in bankruptcy.  (*Martinez*, *supra*, 49 Cal.4th at p. 42.)  Based on the definition of "employer" in the applicable IWC wage order, the plaintiffs argued that the produce merchants, the field agent, and the grower were joint employers and that the merchants and the field agent were therefore liable for the unpaid wages.  (*Id*. at pp. 42-43, 48.)

The *Martinez* court observed that it had never reviewed the concept of joint employment in the context of wage claims brought under state law.  It then held that *Reynolds* "spoke too broadly in concluding that the common law defines the employment relationship in actions under section 1194."  (*Martinez*, *supra*, 49 Cal.4th at p. 50.)  After conducting an extensive review of section 1194 and the IWC wage orders in their "full historical and statutory context," the court concluded that the IWC wage orders define the employment relationship, and thus who may be held liable as an employer for unpaid wages.  (*Id.* at pp. 52-63.)  "While the common law definition of employment plays an important role in the wage orders' definition, and . . . in actions under section 1194, to apply only the common law definition while ignoring the rest of the IWC's broad regulatory definition would substantially impair the commission's authority and the effectiveness of its wage orders."  (*Id.* at p. 65.)

---

[7]  Plaintiffs also cite *Mendiola v. CPS Security Solutions, Inc.* (2013) 217 Cal.App.4th 851, review granted Oct. 16, 2013, S212704.  The California Supreme Court granted review in *Mendiola* after Plaintiffs filed their opening brief.  In light of this development, we will not consider this legal authority.  (Cal. Rules of Court, rules 8.1105(e), 8.1115(a).)

The court in *Martinez* noted that under the wage orders, "to employ" has three alternative definitions: "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Martinez, supra,* 49 Cal.4th at p. 64, original italics.) Thus, the wage orders' "definition of employment incorporates the common law definition *as one alternative*" and "is broad enough to reach through straw men and other sham arrangements to impose liability for wages on the actual employer." (*Id.* at pp. 64, 71, original italics.) In addition, "one of the reasons the IWC defined 'employer' in terms of exercising control was to reach situations in which multiple entities control different aspects of the employment relationship. This occurs, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and another entity supervises the work." (*Id.* at p. 76.)

But *Martinez* did not completely abrogate *Reynolds,* as Plaintiffs assert. To the contrary, the *Martinez* court expressly reaffirmed *Reynolds* in pertinent part, stating, "The opinion in *Reynolds* . . . properly holds that the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency. [Citation.] The opinion should not be read more broadly than that." (*Martinez, supra,* 49 Cal.4th at p. 66.) Examining the relationship between the parties, the *Martinez* court concluded that the produce merchants were not joint employers and were therefore not liable for the plaintiffs' unpaid wages. (*Id.* at pp. 71-77.) Addressing the liability of the field agent, the court again reaffirmed *Reynolds*: "Plaintiffs specifically allege in the operative complaint that. . . [the field agent] 'was acting in his capacity as agent . . . the claim fails under our holding in *Reynolds*, . . . , [since] the IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency." (*Id.* at p. 75.)

Plaintiffs contend Beyer and Lee meet all three definitions from *Martinez* because they "determined the amount of assigned work, and therefore the compensation . . .

11

derived from that assigned work," "individually controlled whether compensation was . . . paid (or not paid)," "individually decided not to pay guaranteed salaries," and "individually failed to guarantee draw payments . . . and on some occasions decided to pay no draws at all." But the second amended complaint also alleges that "each defendant was the agent, servant, joint venturer, partner, and/or employee of each and every one of the other defendants, and was acting within the course and scope of their authority . . . ." and that "[a]ny acts or omissions attributed herein to a corporation . . . were authorized acts, performed by an authorized representative of said entity, *acting within the course and scope of his agency or authority*, . . . ." (Italics added.) Plaintiffs' claims thus fail under *Reynolds* and *Martinez* since "IWC's definition of 'employer' does not impose liability on individual corporate agents acting within the scope of their agency." (*Martinez*, *supra*, 49 Cal.4th at p. 66.)

Plaintiffs nonetheless argue that their second amended complaint does not allege that every act by Beyer and Lee was done within the scope of their agency and that it "details numerous activities undertaken by Beyer and Lee in controlling wages, hours, working conditions, and the requirements of work." But none of that activity is tortious conduct that takes Beyer and Lee outside the rule stated in *Reynolds* and *Martinez*. (*Reynolds*, *supra*, 36 Cal.4th at pp. 1089-1090.)

Plaintiffs attempt to distinguish this case from *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419 (*Futrell*)and *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176 (*Aleksick*), which address the question whether a payroll processor was a joint employer for the purposes of the Labor Code wage statutes. (*Futrell*, at pp. 1430-1435 [outside third-party payroll processing company not a joint employer]; *Aleksick*, at pp. 1186-1191 [franchisor that provided payroll services to franchisee not a joint employer].) Since neither case addresses the liability of a corporate agent, they are inapposite.

12

Finally, in support of their contention that Beyer and Lee were employers for the purpose of their wage claims, Plaintiffs cite *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912 (*Guerrero*) and two federal district court cases (*Arrendondo v. Delano Farms Co*. (2013) 922 F.Supp.2d 1071 (*Arrendondo*) and *Guifu Li v. A Perfect Day Franchise, Inc*. (2012) 281 F.R.D. 373 (*Guifu Li*).) But Plaintiffs' reliance on these cases is misplaced, since they do not address the liability of individual corporate officers or agents acting within the scope of their agency. (*Guerrero*, *supra*, at pp. 917-919 [court examined liability of a county and a public authority for unpaid wages of in-home support services providers]; *Arredondo*, at pp. 1087-1089 [district court examined whether grower was a joint employer with labor contractors (a corporation and a limited partnership), not corporate officers or agents]; and *Guifu Li*, at pp. 401-402 [court examined whether one of two corporate defendants, not corporate officers or agents, was a joint employer].)

Applying *Martinez*, we hold that Beyer and Lee cannot be held individually liable to Plaintiffs for failing to: (1) pay wages upon separation; (2) pay overtime; (3) maintain and furnish accurate wage statements and time records; and (4) pay minimum wages. The court did not err in its application of *Reynolds* and *Martinez* or in sustaining Defendants' demurrer on this basis.

## III. Fifth Cause of Action for Unfair Competition (Bus. & Prof. Code, § 17200 et seq.)

Plaintiffs also argue that the court erred in failing to separately analyze Beyer's and Lee's individual liability under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) because the standard applicable to such claims differs from that used for claims under the Labor Code.[8] We note, however, that Defendants demurred only to the

---

[8] In support of their claim that "individual liability arises for individuals who personally engage in unfair competition and/or unlawful practices," Plaintiffs cite a depublished decision (*Grodensky v. Artichoke Joe's Casino* (2009) 171 Cal.App.4th 1399, review granted June 24, 2009, S172237, review dismissed October 27, 2010) in

13

first four causes of action for Labor Code violations. They did not demur to the Unfair Competition Law claim, which was alleged against BLG only. The Business and Professions Code section 17200 claim is therefore not at issue in this appeal.

## IV. Leave to Amend

We review the denial of leave to amend after the sustaining of a demurrer under an abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320, citing *Schifando*, at p. 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid.*) Furthermore, "[i]f the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment. [Citations.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["second amended complaint does not on its face foreclose any reasonable possibility of amendment"].) "It is not up to the court to figure out how a complaint can be amended; rather, the burden is on the plaintiff to show the manner in which he [or she] can amend, and how that amendment will cure the defect." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

Plaintiffs do not argue for leave to amend with regard to the first four causes of action for alleged Labor Code violations. But they do argue, in conclusory fashion, that the "court should allow plaintiffs the opportunity to amend their allegations, if at all possible, to establish . . . Bus. & Prof. Code § 17200 liability." Since Beyer's and Lee's liability for Plaintiffs' unfair competition claim was not at issue in the demurrer, this

violation of rules 8.1105(e) and 8.1115(a) of the California Rules of Court. (See *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 518-519, fn. 2.) We will disregard this improperly cited authority.

14

issue is not properly before us on appeal. Moreover, since the unfair competition claim is based on unlawful conduct (the alleged Labor Code violations), and the complaint fails to state a cause of action against Beyer and Lee for those Labor Code violations, any unfair competition claim against Beyer and Lee based on the alleged Labor Code violations also fails. (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 383.) Plaintiffs have not met their burden of proving how their complaint could be amended to state a cause of action for the alleged Labor Code violations or for unfair competition against Beyer and Lee; therefore, the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

 Rushing, P. J.

_____

 Premo, J.