[No. D059236. Fourth Dist., Div. One. May 8, 2012.]

KIMBERLY ALEKSICK, Plaintiff and Appellant, v.
7-ELEVEN, INC., Defendant and Respondent.

## Counsel

Sullivan & Christiani, William B. Sullivan, Kevin D. Sullivan, Gavin E. Gruber and Amber H.T. Gardina for Plaintiff and Appellant.

Payne & Fears, Eric C. Sohlgren; Welter Law Firm, Eric A. Welter and Laura B. Chaimowitz for Defendant and Respondent.

OPINION

McCONNELL, P. J.—Plaintiff Kimberly Aleksick, individually and on behalf of a class of those similarly situated, appeals a judgment following an order granting defendant 7-Eleven, Inc.'s (7-Eleven) motion for summary judgment. 7-Eleven provides payroll services to its franchisees. Aleksick contends reversal is required because 7-Eleven's payroll system violates both the "unlawful" and "unfair" prongs of Business and Professions Code section 17200.[1] Specifically, she asserts that 7-Eleven's practice of converting any partial hour worked in a pay period from minutes to hundredths of an hour sometimes shorts employees of a few seconds of time, and commensurate pay, and thus violates Labor Code wage statutes. She focuses on the following elementary example: 20 minutes is one-third of an hour, and at an hourly rate of $12, pay should be $4. When 7-Eleven converts the 20 minutes to 0.33, however, and multiplies that figure by $12, pay is $3.96. Aleksick challenges 7-Eleven's practice of ignoring numbers more than two places from the decimal point.

We affirm the judgment. Aleksick's complaint does not allege any statutory predicate for her unfair competition law (UCL) claim of unlawfulness, and she did not seek leave to amend. Thus, the principle of forfeiture applies. Moreover, even without forfeiture, she cannot pursue a UCL claim for unlawfulness because the Labor Code wage statutes govern the employee-employer relationship, and undisputed evidence shows 7-Eleven was not the class members' employer. For the same reason, Aleksick cannot pursue her claim of unfairness under the UCL, which is tethered to the public policy in favor of requiring employers to comport with Labor Code wage statutes and promptly and fully pay their employees. The trial court correctly determined 7-Eleven is entitled to judgment as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

Michael Tucker owns franchises for two 7-Eleven stores. His relationship with 7-Eleven is governed by a franchise agreement that designates him an independent contractor. He is responsible for overall store operations, including all matters pertaining to employees, such as hiring and firing, setting pay, and scheduling work.

---

[1] Further statutory references are also to the Business and Professions Code unless otherwise specified.

The franchise agreement requires Tucker to use 7-Eleven's weekly payroll processing service for his employees. Hourly employees clock in and out on an "In Store Processor" (ISP). The ISP records time in hours, minutes and seconds, but for purposes of pay, 7-Eleven uses hours and whole minutes; seconds are ignored. For any partial hours, 7-Eleven calculates pay using decimal hours rather than minutes. 7-Eleven converts the total number of hours and minutes worked to a total number of minutes, and divides that figure by 60 to convert the time to hours and hundredths of an hour. 7-Eleven ignores numbers beyond the hundredth place, the second number to the right of the decimal point, a practice the parties refer to as truncation.

In August 2005 Tucker hired Aleksick to work as a clerk in his 7-Eleven stores. Her employment ended in February 2007. She sued 7-Eleven, individually and as a proposed class representative, for violation of the UCL.[2] The operative fourth amended complaint (complaint) alleges 7-Eleven's payroll method, specifically the practice of truncating decimal hours to the hundredth place, is both unlawful and unfair because it shorts class members of seconds of work time per pay period, and commensurate pay. The complaint prays for restitution and injunctive relief.

To avoid protracted litigation over certification issues, the parties stipulated to certification of the following class: "All individuals who received employment compensation at any time between April 16, 2003, and (Date of class certification) based on an hourly rate multiplied by the total hours worked in a work week whose compensation was processed by the 7-Eleven payroll system and involved the application of the practice of truncating the total hours worked in a work week to two decimal places and who worked for a 7-Eleven franchisee in California who had signed a Store Franchise agreement with 7-Eleven." (Italics omitted.)

Aleksick moved for summary adjudication. She sought findings that 7-Eleven "had a duty to refrain from committing unfair business practices," and that it breached the duty.[3] 7-Eleven moved for summary judgment, or in the alternative, summary adjudication. 7-Eleven argued it is not subject to a

---

[2] The complaint also named Tucker as a defendant, but he is not involved in this appeal. Further, the complaint included a breach of contract cause of action against 7-Eleven, which was adjudicated in its favor and is not at issue on appeal.

[3] Aleksick did not attribute any ill intent to 7-Eleven. Her attorney advised the court that 7-Eleven truncated decimal hours to the hundredth place on the ground it was "easier for their computer systems."

UCL claim because the complaint alleges no statutory predicate, as a payroll services provider 7-Eleven was not the employer of Aleksick or other class members, and the alleged injury "is insufficient to support the claim."

In support of its motion, 7-Eleven submitted evidence that Tucker, not 7-Eleven, was Aleksick's employer. 7-Eleven also submitted the expert declaration of an economist and statistician, Dwight Steward, Ph.D., on the issue of damages. The declaration states Dr. Steward reviewed the timesheets and earnings statements of 158 randomly drawn 7-Eleven employees for a total of 1,072 pay periods. Disregarding salaried employees, who are not members of the class, Dr. Steward found that 348 of the pay periods were subjected to truncation by 7-Eleven. In 336 of those pay periods, Dr. Steward calculated "there was no difference between the employee's pay based on the non-truncated hours and the employee's pay based on the truncated hours."

As to the remaining 12 pay periods reviewed, which involved eight employees, Dr. Steward attached a table to his declaration to show the potential damages. His declaration states: "As the table shows in column 9, the largest discrepancy for any employee or pay period was 0.0067 hours or about 24 seconds of lost time for the entire week of work. The majority of pay periods that were affected by 7-Eleven's truncation policy potentially lost 12 seconds of time per week of work. The average amount per pay period that was affected by the 7-Eleven truncation policy was $0.04 per week." The declaration also states the table shows that "[c]ollectively, for the 12 pay periods that were affected by truncation, there is a total potential loss of 2.60 minutes of work time or a total wage loss of $0.48."

Aleksick did not present any expert evidence. She submitted timecards and earnings statements for herself and a few other employees. Most of the copies of earnings statements in the clerk's transcript, however, are too dark to decipher. The timecards show the time an employee clocked in and out each day, and 7-Eleven's conversion of the hours and minutes to hours and decimal hours. Aleksick claimed the timecards show the class members were shorted on their time, but she did not present mathematical calculations required to support the showing. Thus, without performing the math itself, the trial court could not ascertain whether the timecards support Aleksick's claim.

After a hearing, the court granted 7-Eleven's motion for summary judgment and denied Aleksick's motion for summary adjudication. The court did

not address 7-Eleven's arguments the UCL is inapplicable because the complaint does not allege any statutory predicate for it, and 7-Eleven is not the class members' employer.

The court held "the practice of calculating employee pay based upon the decimal system, rather than using a fractional system, is inherently reasonable, and does not constitute a violation of [the UCL]." The court also held the practice of "truncating the decimal point after the second digit once a week is inherently reasonable," and does not violate the UCL. The court explained "the plaintiff class will never be able to prove harm from this," because the law "requires that all wages be paid in the context of . . . the human ability to measure and the human ability to deal with the world." The court noted the "[m]aximum value of [the third] decimal is .009. By my calculation, simple enough, .009 applied to an hour results in a little over 30 seconds."

Further, the court determined there was no unfair business practice because the potential for error in 7-Eleven's truncation practice was less than the potential for error in the input data—the recording of time in whole minutes twice per work shift. For instance, an employee clocking in at 7:00:59 and clocking out at 7:25:01 would be paid for 25 minutes of work rather than the 24 minutes and two seconds actually worked.

DISCUSSION

I

*Standard of Review*

"The standard of review of an order granting summary judgment is well established. Our review is de novo. [Citation.] We independently review the entire record, except as to evidence to which objections were timely made and sustained, in the same manner as the trial court. [Citation.] First, we review the issues framed by the operative pleadings to determine the scope of material issues. We then determine if the moving party has discharged its initial movant's burden of production. If we determine the moving party made the requisite prima facie showing of the nonexistence of a triable issue of fact, we then review the opposing party's submissions to determine if a material triable issue exists. [Citations.] 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary

doubts or ambiguities in plaintiff's favor.' " (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1008–1009 [118 Cal.Rptr.3d 834].)

## II

## *UCL*

## A

## *Overview*

█ The UCL does not proscribe specific activities, but in relevant part broadly prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) " ' "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. 'In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa.' " ' " (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 644 [72 Cal.Rptr.3d 903] (*Puentes*), citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).)

█ A private party has standing to bring a UCL action only if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." (§ 17204.) "While the scope of conduct covered by the UCL is broad, its remedies are limited." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 [131 Cal.Rptr.2d 29, 63 P.3d 937] (*Korea Supply*).) "Suits asserting statutory UCL claims are equitable actions. [Citation.] For that reason, 'compensatory damages are not available' in such suits." (*Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1009 [36 Cal.Rptr.3d 592].) "Prevailing plaintiffs are generally limited to injunctive relief and restitution." (*Cel-Tech, supra,* 20 Cal.4th at p. 179; see § 17203.) "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (*Korea Supply, supra,* 29 Cal.4th at p. 1149.)

B

*Unlawful Conduct Prong of UCL*

1

*Forfeiture of Claim*

■ " 'By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.' " (*Puentes, supra,* 160 Cal.App.4th at p. 644.) "Virtually any law—federal, state or local—can serve as a predicate for a [UCL] action." (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102–1103 [53 Cal.Rptr.2d 229], disapproved on another point in *Cel-Tech, supra,* 20 Cal.4th at pp. 184–185.) When a statutory claim fails, a derivative UCL claim also fails. (*Cel-Tech, supra,* 20 Cal.4th at p. 182.)

As the predicate for her claim of unlawfulness under the UCL, Aleksick cites Labor Code sections 204, subdivision (a) (requires employer to pay wages twice a month), 223 (prohibits employer from secretly paying lower wages while purporting to pay wages designated by statute or contract), 510, subdivision (a) (requires employer to pay overtime compensation), 1182.12 (requires employer to pay minimum wages), and 1194, subdivision (a) (authorizes civil action by employee for unpaid minimum wages or overtime compensation). Aleksick contends the court erred by not finding 7-Eleven's payroll method, specifically the practice of truncating decimal hours to the hundredth place, violates these Labor Code wage statutes.

Aleksick, however, cites the Labor Code wage statutes for the first time on appeal. Her complaint does not allege any statutory predicate for the UCL cause of action. The complaint merely alleges 7-Eleven "has violated both California law and/or its own contractual promise, thereby depriving the class members of money earned by them." This vague allegation did not notify 7-Eleven that in moving for summary judgment it was required to address Labor Code sections 204, subdivision (a), 223, 510, subdivision (a), 1182.12, and 1194, subdivision (a).

In its motion, 7-Eleven argued it was entitled to judgment on the UCL claim of unlawfulness because the complaint "failed to cite any underlying law or statutory violation." In opposition, Aleksick nonetheless neither cited any statutory predicate for the UCL claim nor sought leave to amend the complaint to do so. She merely argued "[e]ntitlement to wages and overtime compensation is based on an important public policy," and "the Legislature's

decision to criminalize certain employer conduct, such as wage and overtime violations, reflects a determination that the conduct involves a broader public interest." Aleksick's attorney argued at the hearing that the court's proposed ruling "is abrogating the California minimum wage and overtime laws," but he did not cite the Labor Code or request leave to amend the complaint. Regardless of his comments, this showing was insufficient to raise a triable issue of material fact.

 This court's opinion in *Distefano v. Forester* (2001) 85 Cal.App.4th 1249 [102 Cal.Rptr.2d 813] (*Distefano*), is instructive. In *Distefano*, the plaintiff argued in his written opposition to a summary judgment motion that the defendant violated statutory duties of care under specified provisions of the Vehicle Code. We concluded the argument was insufficient to raise a triable issue of material fact because the complaint included no such allegation and the plaintiff did not seek leave to amend. We explained: "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion." (*Distefano, supra*, at pp. 1264–1265; see *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 [78 Cal.Rptr.3d 372] [" 'complaint measures the materiality of the facts tendered in a defendant's challenge to the plaintiff's cause of action' "].)

 Under the circumstances, we conclude Aleksick forfeited her argument under the Labor Code wage statutes. "Forfeiture is the ' "failure to make the timely assertion of a right." ' " (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 521, fn. 3 [113 Cal.Rptr.3d 327, 235 P.3d 988].) While the trial court did not address forfeiture, we affirm a summary judgment if it is correct under any theory. " 'The trial judge's stated reason for granting summary judgment is not binding on us because we review its ruling, not its rationale.' " (*United Parcel Service Wage & Hour Cases, supra*, 190 Cal.App.4th at p. 1009.) Neither 7-Eleven nor the court was required to guess the predicate for the UCL cause of action. Aleksick's assertion that the court misinterpreted the plain language of statutes she never specified is unreasonable.

2

*Invalidity of Claim*

Even if Aleksick's complaint had cited the Labor Code wage statutes, however, we would find against her because they govern the employer-employee relationship, and undisputed evidence shows 7-Eleven was not the class members' employer. Again, the trial court did not address this theory, but

we affirm a summary judgment if it is correct on any theory. (*United Parcel Service Wage & Hour Cases, supra*, 190 Cal.App.4th at pp. 1008–1009.)

█ 7-Eleven relies on *Martinez v. Combs* (2010) 49 Cal.4th 35 [109 Cal.Rptr.3d 514, 231 P.3d 259] (*Martinez*), in which our high court concluded that "no generally applicable rule of law imposes on anyone other than an *employer* a duty to pay wages." (*Id.* at p. 49, italics added.) █ " 'The question of whether an employment relationship exists " 'is generally a question reserved for the trier of fact.' " . . . This remains true "[w]here the evidence, though not in conflict, permits conflicting inferences." . . . However, if neither the evidence nor inferences are in conflict, then the question of whether an employment relationship exists becomes a question of law which may be resolved by summary judgment.' " (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210 [77 Cal.Rptr.2d 660].)

In *Martinez*, the court addressed the nature of an employment relationship for purposes of an action for minimum wages under Labor Code section 1194. Agricultural workers sued their employer (Munoz), who operated a strawberry picking operation, and several produce merchants with whom the employer had contractual relationships, for unpaid minimum wages and the concomitant violation of the UCL. The issue was whether the produce merchants were joint employers with Munoz. The trial court held that definitions of the employment relationship included in wage order No. 14-2001, issued by the Industrial Welfare Commission (IWC), entitled "Order Regulating Wages, Hours, and Working Conditions in Agricultural Occupations" (see Cal. Code Regs., tit. 8, § 11140), applied to the action. (*Martinez, supra*, 49 Cal.4th at pp. 42, 62, 66.) The trial court interpreted wage order No. 14 to include three alternative definitions of the term "to employ." (*Martinez, supra*, at p. 64.) "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." (*Ibid.*)

The court added, "This is not to say the common law plays no role in the IWC's definition of the employment relationship. In fact, the IWC's definition of employment incorporates the common law definition *as one alternative*." (*Martinez, supra*, 49 Cal.4th at p. 64.) Under common law, the principal test of an employment relationship is whether the alleged employer " 'has the right to control the manner and means of accomplishing the result desired.' " (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399].) The *Martinez* court affirmed a summary judgment for the produce merchants on the ground they were not employers under any of the definitions in wage order No. 14-2001. (*Martinez, supra*, at pp. 74–75, 77.)

Additionally, 7-Eleven cites *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419 [119 Cal.Rptr.3d 513] (*Futrell*). *Futrell* relied on *Martinez* in holding that a payroll processing company (Payday) that provided services to a producer of television commercials was not a joint employer for purposes of claims for overtime compensation under Labor Code sections 510 and 1194, and a derivative UCL claim. (*Futrell, supra,* at p. 1423.) At issue in *Futrell* was the IWC's wage order No. 12-2001, which regulates wages, hours and working conditions in the "Motion Picture Industry." (*Futrell, supra,* at p. 1429; see Cal.Code Regs., tit. 8, § 11120.) The definition of the employment relationship in wage order No. 12-2001 was identical to that in wage order No. 14-2001 under consideration in *Martinez.* (*Futrell, supra,* at p. 1429.)

 As a matter of first impression, *Futrell* held that a payroll company does not have control over employee wages for purposes of determining liability under Labor Code wage statutes. (*Futrell, supra,* 190 Cal.App.4th at p. 1432.) *Futrell* concluded that " 'control over wages' means that a person or entity has the power or authority to negotiate and set an employee's rate of pay, and not that a person or entity is physically involved in the preparation of an employee's paycheck. This is the only definition that makes sense. . . . The preparation of payroll is largely a ministerial task, albeit a complex task in today's marketplace. The employer, however, is the party who hires the employee and benefits from the employee's work, and thus it is the employer to whom liability should be affixed for any unpaid wages. The extension of personal liability to the agents of an employer is not reasonably derived from the language and purposes of the Labor Code wage statutes." (*Ibid.*) This conclusion applies whether the preparation of payroll is "done by an internal division or department of an employer, or by an outside vendor of an employer." (*Ibid.*)

*Futrell* also explained there "is no evidence . . . Payday allowed [the plaintiff] to suffer work, or permitted him to work, because there is no evidence showing Payday had the power to either cause him to work or prevent him from working." (*Futrell, supra,* 190 Cal.App.4th at p. 1434, citing *Martinez, supra,* 49 Cal.4th at p. 70.) Additionally, Payday did not meet the common law definition of an employer because it did not and could not hire or fire the plaintiff, and it did not direct or supervise his work. (*Futrell, supra,* at p. 1435.) *Futrell* affirmed summary judgment for Payday. (*Id.* at pp. 1426–1429.)

*Futrell* also cited *Singh v. 7-Eleven, Inc.* (N.D.Cal., Mar. 8, 2007, No. C-05-04534 RMW) 2007 U.S.Dist. Lexis 16677 (*Singh*) (*Futrell, supra,*

190 Cal.App.4th at p. 1432), a federal district court case.[4] In *Singh*, employees of a 7-Eleven franchisee (Duong) sued 7-Eleven for overtime wages under Labor Code sections 204, 510 and 1194. The evidence showed Duong hired the employees, determined their pay rates, instructed them on their job duties, and scheduled their work shifts. (*Singh, supra,* at pp. *1–*5.) Further, the evidence showed that "[f]or each pay period, Duong sent information about the plaintiff's' hours worked and rate of pay to 7-Eleven accounting in Dallas, Texas. [Citation.] The following Thursday, 7-Eleven deducted the payroll expense from Duong's equity account and sent payroll checks via courier to Duong. [Citation.] The checks were subsequently distributed to plaintiffs." (*Id.* at p. *5.)

▮ In *Singh*, the court granted 7-Eleven summary judgment, finding under common law that 7-Eleven was not the plaintiffs' employer. (*Singh, supra,* 2007 U.S.Dist. Lexis 16677 at p. *1.) The opinion explains: "California courts have consistently recognized that the princip[al] test for determining employment relationships is the right of control over the manner or means of accomplishing the result desired. [Citing *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d. 49, 54 [213 Cal.Rptr. 825]; *Isenberg v. California Employment Stabilization Com.* (1947) 30 Cal.2d 34, 39 [180 P.2d 11].] 'If control may be exercised only as to the result of the work and not the means by which it is accomplished, an independent contractor relationship is established.' [Citations.] Strong evidence of the right to control is shown by the right to discharge the worker." (*Singh, supra,* at p. *20, citing *Isenberg*, 30 Cal.2d at p. 39; see *Tieberg v. Unemployment Ins. Appeals Bd.* (1970) 2 Cal.3d 943, 946–947 [88 Cal.Rptr. 175, 471 P.2d 975].)

▮ *Singh* rejected the argument that the franchisee's "right to run the operation is illusory and that, in reality, the franchise agreement allows 7-Eleven to control the essential areas relating to the terms and conditions of employment." (*Singh, supra,* 2007 U.S.Dist. Lexis 16677 at pp. *20–*21.) As to 7-Eleven's provision of payroll services, *Singh* found "[t]hese ministerial functions are insufficient to support plaintiffs [*sic*] argument that 7-Eleven controls labor relations. Providing a 'payroll service to a franchisee's employees does not in any manner create an indicia of control over labor relations sufficient to demonstrate that the franchisor is a joint employer.' " (*Id.* at p. *17, citing *Hatcher v. Augustus* (E.D.N.Y. 1997) 956 F.Supp. 387, 392.) Further, "[a]lthough 7-Eleven generates paychecks, this is merely a convenience for the franchisees such as Duong, who provided all relevant wage and tax information." (*Singh, supra,* at p. *18.) *Singh* cites *Cislaw v. Southland*

---

[4] *Futrell* notes, "Although not binding precedent on our court, we may consider relevant, unpublished federal district court opinions as persuasive. (See, e.g., *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1301 [42 Cal.Rptr.3d 268].)" (*Futrell, supra,* 190 Cal.App.4th at p. 1432, fn. 6.)

*Corp.* (1992) 4 Cal.App.4th 1284, 1295 [6 Cal.Rptr.2d 386], for the proposition that a " 'franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and good will, without the risk of creating an agency relationship with its franchisees.' " (*Singh, supra,* at p. *21.)

Here, 7-Eleven argued the UCL claim is not viable because it was not the class members' employer. 7-Eleven submitted evidence that its relationship with Tucker is governed by a franchise agreement, which designates him an independent contractor. He is responsible for overall store operations, including hiring and firing employees, setting rates of pay and raises, scheduling work and vacations, and giving performance reviews. 7-Eleven also submitted evidence pertaining to the processing of payroll. At the end of each week, Tucker submits to 7-Eleven the hourly rate and number of hours worked by his employees. He then transmits the information to 7-Eleven for its processing of payroll checks.

This case does not pertain to an IWC wage order. 7-Eleven's evidence, however, satisfies its prima facie burden of showing it was not the employer of Aleksick or other class members under any definition of the employment relationship, whether based strictly on common law or on the additional IWC wage order definitions of the type considered in *Martinez* and *Futrell*. 7-Eleven exercised no control over Tucker's employees, including their hiring or firing, rate of pay, work hours and conditions; 7-Eleven did not "suffer or permit" the employees to work; and it did not engage them in work. (*Martinez, supra,* 49 Cal.4th at p. 64.)

Aleksick did not meet her burden of raising a material issue of fact on the employment issue. Indeed, in supplemental briefing we requested, Aleksick concedes "it is undisputed that 7-Eleven is not the employer of the class members." (Some capitalization omitted.)

Aleksick cursorily contends 7-Eleven's truncation policy was illegal for purposes of the Labor Code wage statutes although it was not the class members' employer. She asserts, "Whether 7-Eleven was the Class' employer is not relevant . . . because 7-Eleven was indisputably the party responsible for payment of wages." She cites to a provision of the franchise agreement that merely discusses 7-Eleven's provision of payroll services to franchisees. The provision does not suggest 7-Eleven actually funded the payroll.

██ Additionally, Aleksick cursorily asserts that since the franchise agreement required Tucker to use 7-Eleven's payroll service, it "created a principal-agent relationship as to payroll, and thus 7-Eleven is liable for all acts in violation of the Labor Code." We conclude the mandatory nature does

not change the outcome. Again, "no generally applicable rule of law imposes on anyone other than an *employer* a duty to pay wages." (*Martinez, supra,* 49 Cal.4th at p. 49, italics added.) Additionally, while the complaint included a standard allegation of agency, Aleksick did not raise an agency theory in opposition to 7-Eleven's motion, and an appellant may not raise a theory for the first time on appeal.

Further, Aleksick cites *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191 [127 Cal.Rptr.3d 185, 254 P.3d 237] (*Sullivan*), to show 7-Eleven's payroll method was unlawful under the Labor Code. In *Sullivan,* however, employees sued their *employer. Sullivan* held Labor Code sections 510 and 1194, which pertain to overtime compensation, apply to nonresident employees of a California-based employer, for time worked in California. (*Sullivan, supra,* at p. 1194.) Of course, insofar as employers are concerned, there is a strong public policy in favor of the payment of overtime, as *Sullivan* explains. (*Id.* at p. 1198.) Aleksick's reliance on *Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 118, 121 [127 Cal.Rptr.3d 883] (*Securitas*), is misplaced for the same reason. As a matter of law, Aleksick cannot maintain a claim for unlawful conduct under the UCL.

C

*Unfair Practice Prong of UCL*

1

*Definition of Term "Unfair"*

Aleksick also contends there are triable issues of material fact on the unfair practice prong of the UCL. We disagree.

The UCL does not define the term "unfair" as used in section 17200, and the California Supreme Court has not decided the issue in the context of a consumer action. In *Cel-Tech, supra,* 20 Cal.4th 163, the court held in the context of a competitor action that the term "unfair" in section 17200 "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech, supra,* 20 Cal.4th at p. 187.) The court also held that "to guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." (*Id.* at pp. 186–187.)

*Cel-Tech* left open the question of whether its definition of "unfair" should also apply to consumer cases. (*Cel-Tech, supra,* 20 Cal.4th at p. 187, fn. 12.) *Cel-Tech,* however, criticized as "too amorphous" the appellate courts' previous attempts to define the term "unfair" in consumer cases. (*Id.* at p. 185.) *Cel-Tech* cited *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530 [206 Cal.Rptr. 164], which held "[a]n 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1104, which held that in assessing unfairness a " ' "court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." ' " (*Cel-Tech,* at p. 184.)

Following *Cel-Tech,* appellate courts have differed on the proper definition of the term "unfair" in consumer cases. (*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1267 [39 Cal.Rptr.3d 634]; *Puentes, supra,* 160 Cal.App.4th at p. 646.) In *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 720, footnote 23 [113 Cal.Rptr.2d 399], the court concluded "we are not to read *Cel-Tech* as suggesting that such a restrictive definition of 'unfair' should be applied in the case of an alleged *consumer* injury." The court applied the test used in *People v. Casa Blanca Convalescent Homes, Inc., supra,* 159 Cal.App.3d at page 530, set forth *ante.* (*Smith, supra,* at pp. 718–719.)

■ In *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 [128 Cal.Rptr.2d 389] (*Gregory*), the court concluded: "*Cel-Tech* . . . may signal a narrower interpretation of the prohibition of unfair acts or practices in all unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the court found to be 'too amorphous.' Moreover, where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."[5]

This court has followed the *Gregory* line of cases. (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940 [134 Cal.Rptr.2d 101];

---

[5] *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394 [48 Cal.Rptr.3d 770] devised a third approach based on section 5 of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.): For a finding of unfairness, "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (*Camacho,* at p. 1403; accord, *Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 595 [101 Cal.Rptr.3d 697].)

*Byars* v. *SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147 [135 Cal.Rptr.2d 796]; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1366 [108 Cal.Rptr.3d 682].)

2

*Invalidity of Claim*

Aleksick contends "7-Eleven's 'unfair' practice is directly tethered to a legislatively declared policy," the public policy in favor of full payment to employees for all hours worked. This issue involves the legal significance of undisputed facts, and thus the issue may be resolved as a matter of law. (*Puentes, supra*, 160 Cal.App.4th at pp. 642–643.)

For a discussion of public policy, however, Aleksick relies on inapt opinions in which employees sued their *employers* for unpaid wages. (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82 [45 Cal.Rptr.3d 394, 137 P.3d 218], citing *Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326 [19 Cal.Rptr. 492, 369 P.2d 20] [*employer* who knows wages are due, has ability to pay, and refuses to pay, " 'acts against good morals and fair dealing' "]; *In re Trombley* (1948) 31 Cal.2d 801, 810 [193 P.2d 734] [same]; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1400 [117 Cal.Rptr.3d 377, 241 P.3d 870]; *Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837 [187 Cal.Rptr. 449, 654 P.2d 219]; *Phillips v. Gemini Moving Specialists* (1998) 63 Cal.App.4th 563, 570 [74 Cal.Rptr.2d 29]; *Sullivan, supra*, 51 Cal.4th at pp. 1194, 1198; *Securitas, supra*, 197 Cal.App.4th at pp. 118, 121.)

As Aleksick acknowledges, the "policy in favor of full and prompt payment of wages is specifically tied to the statutory provisions of the Labor Code." The Labor Code wage statutes, however, are inapplicable to 7-Eleven because it was not the class members' employer. Thus, the "unfairness" claim against 7-Eleven fails. The summary judgment for 7-Eleven is proper.[6]

---

[6] Given our holdings, we do not reach the issue of whether an *employer* could be liable under the Labor Code wage statutes and the UCL for the conversion of any partial hour worked from minutes to hundredths of an hour. " '[A]ppellate courts as a rule will not render opinions on moot questions . . . . The policy behind this rule is that courts decide justiciable controversies and will normally not render advisory opinions.' " (*Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291, 1296 [86 Cal.Rptr.3d 324].)

## DISPOSITION

The judgment is affirmed. 7-Eleven is entitled to costs on appeal.

Huffman, J., and Nares, J., concurred.