Filed 2/5/14  Arreola v. One More Productions CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| STEVE BRIAN ARREOLA, | |
| Plaintiff and Appellant, | G047467 |
| v. | (Super. Ct. No. 30-2011-00479064) |
| ONE MORE PRODUCTIONS, | O P I N I O N |
| Defendant and Appellant. | |

Appeals from a judgment and a postjudgment order of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.  Request for judicial notice.  Granted in part and denied in part.

Law Office of Robert L. Starr, Adam Rose; Law Offices of Marc A. Legget and Marc A. Legget for Plaintiff and Appellant.

Mark S. Rosen for Defendant and Appellant.

\*          \*          \*

## INTRODUCTION

Following a bench trial on wage and hour claims and an unfair competition claim, the trial court found plaintiff Steve Brian Arreola provided carpentry services for defendant One More Productions, as an independent contractor, not as an employee. The court also found, however, that Arreola had not been paid the agreed upon $20 hourly rate for the 679 hours of labor he provided, and entered judgment in favor of Arreola, awarding him restitution in the amount of $13,580 "under its equitable powers."

One More Productions filed a motion to vacate the judgment and enter a judgment in its favor under Code of Civil Procedure sections 663 and 663a, on the ground the award was not supported by any cause of action. The trial court granted the motion, vacated the judgment, and entered a new judgment in One More Productions's favor. The court, however, denied One More Productions's motion for prevailing party attorney fees under Labor Code former section 218.5. Arreola appeals from the judgment and One More Production appeals from the postjudgment order denying it prevailing party attorney fees.

We affirm both the judgment and the postjudgment order. The trial court properly vacated the original judgment and entered judgment in favor of One More Productions. Substantial evidence supports the court's finding Arreola was an independent contractor and none of Arreola's causes of action provided support for a restitution award. The trial court also properly denied One More Productions's motion for prevailing party attorney fees because the only unpaid "wages" Arreola sought to recover in this action were the alleged unpaid balance of minimum wage and overtime compensation pursuant to Labor Code section 1194; prevailing party attorney fees under Labor Code former section 218.5 were therefore unavailable.

2

FACTS

In June 2008, Arreola was employed by Golden West College (Golden West) as the master carpenter in its scenic shop. Arreola became aware that One More Productions, a small nonprofit community theater company, was in need of a carpenter to build the sets for its first show, Seussical. On June 22, Arreola met with One More Productions's artistic director, Damien Lorton, at the Gem Theater, to discuss building the sets for Seussical.[1] During their meeting, Lorton orally agreed to Arreola's request that he be paid $20 an hour to build the set that had been designed by Wally Huntoon.

Lorton testified that set builders are commonly paid by the hour for their services and not paid a lump sum per project. He explained that after the set design is created for a show, it is given to the set builder who is responsible for taking over the building of the set. Lorton stated, "[i]f something's not working, he can then tweak it to make it work" and would talk to the set designer about it.

Lorton testified that Arreola was retained by One More Productions as an independent contractor, as were the set designer, the choreographer, and the painter. Lorton asked all the independent contractors to let him know when they got close to committing 125 hours of labor so he could keep an eye on costs. The actors and ushers for One More Productions's shows were volunteers. The ticket takers were also the actors. One More Productions did not hire any employees. Lorton did not discuss benefits with Arreola and never told him he was hired as an employee.

Arreola built the set for Seussical at the scenic shop at Golden West and used some of the tools there because One More Productions did not have any tools except for staple guns and an inoperable saw. Arreola required additional tools. Lorton provided him with One More Productions's credit card to buy additional tools at The

_____

[1] The Gem Theater had fallen into disrepair under the care of a prior theater company. One More Productions was preparing to reopen the theater after renovating it for Seussical. The Gem Theater was closed on May 27, 2011, following a fire.

3

Home Depot. Arreola selected and purchased the tools. Lorton did not know what had become of many of the tools that Arreola had purchased. Arreola told Lorton that he needed the help of Timothy Van Gerven (his assistant at Golden West) in building the set at Golden West; Lorton agreed.

On July 16, 2008, Van Gerven submitted an invoice to One More Productions, requesting payment for 118.5 hours of work at a rate of $18 per hour. One More Productions paid Van Gerven in full on August 11.

Seussical opened on July 17 and ran until August 17, 2008. One More Productions's next show was Big River. Lorton retained Arreola's services to build the set for Big River which ran from September 11 until October 12, 2008. Arreola did not tell Lorton he required Van Gerven's assistance to build the Big River sets and Van Gerven did not help build those sets. Although, as artistic director, Lorton had the right to make changes to a set, he did not physically supervise the set construction for either show. Arreola primarily built the Big River set at Golden West.

At some point after September 26, 2008, Arreola submitted an eight-page invoice to Lorton, seeking payment in the amount of $6,920 for 346 hours Arreola had worked and also payment in the amount of $6,660 for another 333 hours he had worked. The invoice identified Lorton and Nicole Cassesso of One More Productions as "customers," identified One More Productions as the "company," and instructed them to "[p]lease make all checks payable to Steve Arreola" at the listed address. Arreola also submitted a request for $622.93 for expense reimbursement, the payment of which is not an issue in this appeal.

When Lorton first looked at the invoice, he thought the number of hours was "very excessive" and not "humanly possible," particularly in light of Van Gerven's work on the Seussical set. Lorton immediately contacted Arreola to schedule a meeting with him. Lorton testified Arreola had not told him how many hours he had worked before submitting that invoice. Lorton offered to pay Arreola a total of $6,000 ($3,000

4

per show) for his carpentry services, which would be paid in $1,500 monthly installments. Arreola refused the offer and threatened to sue One More Productions. Consequently, One More Productions did not pay Arreola for any of his carpentry services. Lorton wrote a check to Arreola in the amount of $1,615, however, for some audio work he did for One More Productions. Arreola cashed that check and that payment is not an issue in this appeal.

PROCEDURAL BACKGROUND

In May 2011,[2] Arreola filed a complaint against One More Productions, containing claims for (1) violation of Labor Code section 1194 (minimum wage); (2) violation of the unfair competition law at Business and Professions Code section 17200 (UCL); (3) violation of Labor Code section 226.7 (rest breaks); (4) violation of Labor Code section 2802 (reimbursements); (5) violation of Labor Code section 203 (waiting time penalty); (6) violation of Labor Code section 226 (wage statements); and (7) quantum meruit.

During the bench trial, the trial court dismissed the violation of Labor Code section 226.7 cause of action after granting Arreola's motion that One More Productions did not oppose.

Following the bench trial, and pursuant to the parties' stipulation, the trial court orally rendered its statement of decision, in which the court, inter alia, (1) stated the California Supreme Court's decision in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350-351 (*Borello*) contained the factors to be applied in the determination whether Arreola acted as an independent contractor or an employee; (2) questioned the credibility of some of the testimony offered by Lorton and Arreola; (3) after applying the *Borello* factors, found Arreola worked for One More

_____

[2] The complaint was filed more than two years after the alleged breach of any oral contract.

5

Productions as an independent contractor; (4) found Arreola worked 679 hours for One More Productions at an agreed rate of $20 per hour, for which he was never paid and One More Productions therefore owed him a total amount of $13,580; and (5) determined the quantum meruit claim was barred by the statute of limitations.

One More Productions's counsel asked the trial court: "On what cause of action is Mr. Arreola entitled to any money if he was not an employee?" The court responded: "The court will impose it under the court's equitable powers, period."

Judgment was entered in favor of Arreola, which stated, inter alia: (1) the quantum meruit cause of action was barred by the statute of limitations and dismissed; (2) the cause of action for failing to provide rest breaks was dismissed on Arreola's motion that One More Productions did not oppose; (3) "[t]he court having found that plaintiff was an independent contractor, and not an employee, the first, second, fourth, fifth, and sixth causes of action are adjudged in favor of defendant"; and (4) "[t]he court awards $13,580 to plaintiff under its equitable powers."

One More Productions filed a motion to vacate the judgment under Code of Civil Procedure sections 663 and 663a, on the ground "the award by the court to plaintiff of $13,580 is not supported by any of the causes of action, and was not entered pursuant to any of the causes of action. The court's decision is outside the basis of the law. It is not supported by any cause of action, or by any theory pled or argued by the plaintiff, or by the evidence. It cannot stand. A different judgment should be entered in favor of defendant."

The trial court granted the motion to vacate the judgment. The order, signed by the court, stated: "Defendant seeks to vacate the judgment in plaintiff's favor and to enter a different judgment in defendant's favor against plaintiff, and an award of costs to defendant. [¶] A motion to vacate under [Code of Civil Procedure] section 663 is a remedy to be used when a trial court draws incorrect conclusions of law or renders an erroneous judgment on the basis of uncontroverted evidence. In ruling on a motion to

6

vacate the judgment the court cannot in any way change any finding of fact. As the statutory language indicates, a motion to vacate lies only where a 'different judgment' is compelled by the facts found. [¶] The 2nd cause of action for unfair competition does not incorporate any of the Labor Code causes of action. [¶] While the 2nd cause of action does not incorporate the Labor Code causes of action, it does incorporate the 'Preliminary Allegations' section of the complaint. [¶] Under the unlawful prong of the statute, the statute borrows violations of other laws—civil or criminal, Federal, State, or Municipal, statutory, regulatory or court made and treats them as unlawful practices independently actionable under the statute. [¶] The 2nd [cause of action] seems based upon the 'unlawful' prong of B&P [(Business and Professions Code)] § 17200 given the allegation in paragraph 23. However, since the Court found that plaintiff was not an employee, the Labor Code sections cited do not apply. [¶] Even if plaintiff is relying upon the fraudulent prong, there are no allegations in the complaint alleging any kind of conduct by defendant that was likely to deceive members of the public to support the fraudulent prong. [¶] There are no allegations in the complaint alleging any kind of conduct by defendant that is 'unfair[.'] [¶] After the Court found in favor of plaintiff, attorney Rosen inquired of the Court as to 'what cause of action is Mr. Arreola entitled to any money if he was not an employee[,'] regarding the $13,580; and 'under what cause of action is he entitled to be paid for 679 hours.' . . . The Court ultimately responded: 'The Court will impose it under the Court's equitable powers, period.' [¶] Plaintiff never requested to amend the complaint and plaintiff does not contend that [he] did amend the complaint to include some other cause of action to support the judgment. [¶] A judgment outside the issues rendered after an answer is filed is not void, but is erroneous, and the defect is necessarily reversible error or a basis for a modification on appeal. [¶] The motion by defendant to vacate the judgment in plaintiff's favor and to enter a different judgment in defendant's favor against plaintiff, and for an award of costs is granted. [¶] Judgment of

June 6, 2012 is vacated and a new and different judgment is entered in favor of defendant, plus costs pursuant to memorandum of costs." (Some capitalization omitted.)

One More Productions thereafter filed a motion seeking an award of $27,265 in prevailing party attorney fees under Labor Code former section 218.5. The trial court denied the motion for attorney fees, stating, in part, in its minute order: "Defendant overlooks the fact that every case interpreting this statute, including *Kirby*[ *v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244], involved an employee claim—not one award[ing] fees in connection with an independent contractor's claim. [¶] Although factually distinguishable, *Borello* . . . supports the view that statutory Labor Code attorney fees are available only in an employer-employee wage dispute."

Arreola appealed from the order granting the motion to vacate the judgment and enter a new judgment in favor of One More Productions. One More Productions appealed from the order denying its motion for prevailing party attorney fees.

Arreola filed a request for judicial notice asking this court to take judicial notice of (1) the California Department of Industrial Relations's "Frequently Asked Questions" page on its Web site, (2) portions of the 2002 Update of the Division of Labor Standards Enforcement Enforcement Policies and Interpretations Manual (Revised), and (3) CACI No. 3708 which jury instruction was discussed during the bench trial in this case. Pursuant to California Rules of Court, rule 8.252 and Evidence Code sections 452, subdivision (c) and 459, we grant Arreola's request as it pertains to the Department of Industrial Relations's Web site and the 2002 Update of the Division of Labor Standards Enforcement Enforcement Policies and Interpretations Manual (Revised). We deny the request for judicial notice as to the pattern jury instruction because it is not a proper subject for judicial notice, but we consider the pattern instruction as it is based on the California Supreme Court's opinion in *Borello*, *supra*, 48 Cal.3d 341, upon which we base our analysis *post*.

## DISCUSSION

## I.

### AREOLA'S CONTENTIONS OF ERROR ON APPEAL

Arreola contends the trial court erred by (1) finding that he worked for One More Productions as an independent contractor, not as an employee; and (2) vacating the judgment, under section 663 of the Code of Civil Procedure, in favor of Arreola on the ground the court could not award Arreola restitution under the UCL as an independent contractor. Neither of Arreola's contentions has merit.

### A.

### *Applicable Standards of Review*

"We review the trial court's express factual findings in the statement of decision, and any implied findings, for substantial evidence. [Citation.] 'We review legal issues . . . under a de novo or independent standard.' [Citation.]" (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608.) "'The determination of employee or independent-contractor status is one of fact if dependent upon the resolution of disputed evidence or inferences'" as is the circumstance in this case. (*Lara v. Workers' Comp. Appeals Bd.* (2010) 182 Cal.App.4th 393, 398.)

Code of Civil Procedure section 663 authorizes a trial court to vacate a judgment and enter a new judgment under the following circumstances: "A judgment or decree, when based upon a decision by the court . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict."

B.

*Substantial Evidence Supported the Trial Court's Finding*
*Areola Was an Independent Contractor.*

Arreola contends the trial court erred by finding that he worked for One More Productions as an independent contractor, not as an employee, and further contends the trial court should have found One More Production willfully misclassified him as an independent contractor. In his opening brief, Arreola does not analyze whether any particular finding of the court was unsupported by substantial evidence. Instead, he argues that the trial court should have found otherwise. The trial court correctly applied the factors identified by the California Supreme Court in the seminal case of *Borello*, *supra*, 48 Cal.3d at pages 350-351, in determining whether Arreola's services were provided as an independent contractor or an employee. Substantial evidence supported the court's finding those services were provided by Arreola as an independent contractor.

Labor Code section 3353 defines an independent contractor as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." Labor Code section 3357 provides, "[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." The appellate court in *Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288, 1292-1293, interpreted section 3357 as creating a presumption that a service provider is "presumed to be an employee except as excluded from that status by law."

In *Borello*, *supra*, 48 Cal.3d at page 350, the California Supreme Court explained: "The distinction between independent contractors and employees arose at common law to limit one's vicarious liability for the misconduct of a person rendering service to him. The principal's supervisory power was crucial in that context because

10

' . . . [t]he extent to which the employer had a right to control [the details of the service] activities was . . . highly relevant to the question whether the employer ought to be legally liable for them. . . .' [Citations.] Thus, the 'control of details' test became the principal measure of the servant's status for common law purposes."

The *Borello* court further explained: "Much 20th-century legislation for the protection of 'employees' has adopted the 'independent contractor' distinction as an express or implied limitation on coverage. The [Workers' Compensation] Act plainly states the exclusion of 'independent contractors' and inserts the common law 'control-of-work' test in the statutory definition. The cases extend these principles to other 'employee' legislation as well. Following common law tradition, California decisions applying such statutes uniformly declare that '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.] [¶] However, the courts have long recognized that the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements. While conceding that the right to control work details is the 'most important' or 'most significant' consideration, the authorities also endorse several 'secondary' indicia of the nature of a service relationship." (*Borello*, *supra*, 48 Cal.3d at p. 350.)

In addition to considering whether the person for whom services is rendered has the right to control the manner and means of performing those services, the *Borello* court identified several factors to be considered in determining whether an individual is engaged to provide services as an independent contractor or as an employee, stating: "[W]e have noted that '[s]trong evidence in support of an employment relationship is the right to discharge at will, without cause. [Citations.]' [Citation.] Additional factors have been derived principally from the Restatement Second of Agency. These include (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the

11

locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. [Citations.] 'Generally, . . . the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' [Citation.]" (*Borello*, *supra*, 48 Cal.3d at pp. 350-351; see *Lara v. Workers' Comp. Appeals Bd.*, *supra*, 182 Cal.App.4th at p. 401 ["'[T]he process of distinguishing employees from independent contractors is fact specific and qualitative rather than quantitative'"].)

Here, as evidenced by the statement of decision, the trial court expressly considered the evidence, weighed credibility, and applied the *Borello* factors, in finding Arreola provided services as an independent contractor.

Substantial evidence showed that One More Productions is a nonprofit community theater company that staged musical theater productions at the Gem Theater. One More Productions is not in the business of performing carpentry services and does not always utilize sets in its productions. Substantial evidence also showed One More Productions retained Arreola's services, based on his skills as a master carpenter, to build sets for two musical productions, pursuant to set designs created by Huntoon. The sets were primarily built offsite at Golden West where Arreola was employed. At Arreola's request, he was assisted by Van Gerven; the progress of their work was not supervised by Lorton or any other person at One More Productions. In building the sets, Arreola not only used workspace at Golden West, he also used Golden West's tools. Arreola, however, required additional tools to complete the sets. One More Productions agreed to pay for the tools that Arreola required, which Arreola thereafter selected and purchased.

12

Although Arreola and Lorton negotiated an hourly rate, Arreola's services were retained on a show-by-show basis. Arreola was first retained to build the set for Seussical, and was again retained to build the set for Big River. Arreola was required to complete each set within weeks and by a specific deadline—the beginning of "tech week." There was no evidence Arreola was otherwise required to work during any specific hours or on any specific days of the week.

As for the parties' subjective understanding of the nature of their relationship, substantial evidence showed both Lorton and Arreola understood that Arreola was an independent contractor. Lorton testified he retained Arreola as an independent contractor to perform carpentry services. Although Arreola testified his understanding was that he was hired as an employee, evidence of his conduct supported a contrary finding. Arreola did not submit timecards to Lorton. Instead, after Arreola completed the set for Seussical, he submitted an "invoice" to One More Productions, billing it for the hours he worked on the set. That invoice referred to Lorton and Cassesso, not as his employers, but as "customers," and requested that they "[p]lease make all checks payable to Steve Arreola." Arreola testified that he never completed any paperwork incidental to the beginning of an employment relationship after his services were retained by Lorton. Substantial evidence, therefore, supports the trial court's finding of an independent contractor relationship based on the *Borello* factors.

In his opening brief, Arreola argues: "Instead of applying the *Borello* factors, the trial court questionably concluded that since Arreola did not submit a job application he was allegedly an independent contractor. . . . The trial court also concluded that because OMP [(One More Productions)] did not give Arreola a Form W-2, he was arguably an independent contractor. . . . There [are] no authorities for the court's determination based on factors such as these. [¶] The only factors the court should have considered are all of the *Borello* factors . . . ." (Some capitalization omitted.)

13

The trial court's statement of decision, as discussed *ante*, shows the court expressly considered the *Borello* factors in light of the evidence. The trial court's review of the evidence, in its detailed statement of decision, belies any suggestion the court's finding that Arreola was an independent contractor was based solely on the evidence referred to by Arreola. Furthermore, evidence that Arreola did not submit a job application and did not receive a W-2 form from One More Productions is relevant to the final *Borello* factor—"whether or not the parties believe they are creating the relationship of employer-employee" (*Borello*, *supra*, 48 Cal.3d at p. 351).

As the trial court did not err in finding Arreola provided services as an independent contractor, Arreola's argument he was willfully misclassified as an independent contractor is without merit.

### C.

*The Trial Court Did Not Err by Granting the Motion to*
*Vacate the Judgment in Arreola's Favor and Entering*
*Judgment in Favor of One More Productions.*

In his opening brief, Arreola argues that "[e]ven assuming arguendo that Arreola actually w[as] an independent contractor, he still must be paid for the work and time that he has a vested interest in." (Some capitalization omitted.) He argues the trial court erred by granting the motion to vacate the judgment in his favor and enter judgment in One More Productions's favor. He argues that if he were an independent contractor, the court should have used its "equitable powers to order restitution for the 679 hours of work Arreola performed for OMP [(One More Productions)] at the agreed on rate of $20 per hour," pursuant to his UCL claim. (Some capitalization omitted.) But, Arreola failed to establish One More Productions engaged in an unlawful or unfair business practice within the meaning of the UCL. The trial court, therefore, could not award Arreola restitution based on his UCL claim.

14

In *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1180 (*Aleksick*), the plaintiff, as an individual and on behalf of a class of similarly situated individuals, sued 7-Eleven, Inc., for violation of the UCL because the payroll system it provided to its franchisees "convert[ed] any partial hour worked in a pay period from minutes to hundredths of an hour." The consequence of that practice was that the system would sometimes "short[] employees of a few seconds of time, and commensurate pay, and thus violate[] Labor Code wage statutes." (*Aleksick*, *supra*, at p. 1180.)

The trial court granted summary judgment in favor of 7-Eleven, Inc., and the appellate court affirmed the judgment. (*Aleksick*, *supra*, 205 Cal.App.4th at p. 1180.) The appellate court explained: "[Kimberly] Aleksick's complaint does not allege any statutory predicate for her unfair competition law (UCL) claim of unlawfulness, and she did not seek leave to amend. Thus, the principle of forfeiture applies. Moreover, even without forfeiture, she cannot pursue a UCL claim for unlawfulness because the Labor Code wage statutes govern the employee-employer relationship, and undisputed evidence shows 7-Eleven was not the class members' employer. For the same reason, Aleksick cannot pursue her claim of unfairness under the UCL, which is tethered to the public policy in favor of requiring employers to comport with Labor Code wage statutes and promptly and fully pay their employees. The trial court correctly determined 7-Eleven is entitled to judgment as a matter of law." (*Ibid.*)

Here, Arreola's UCL claim was based on the allegation in his complaint that One More Productions "engaged in *unlawful* conduct by not paying Arreola for all hours worked, not paying overtime compensation, not reimbursing Arreola for expenses, not providing Arreola with accurate itemized wage statements, and not allowing Arreola to take rest breaks." (Italics added & some capitalization omitted.) The allegations of the complaint, offered in support of the UCL claim, only refer to two statutes—Labor Code

15

sections 2802 and 1194. But, section 2802[3] requires an *employer* to promptly indemnify an *employee* for losses or expenses incurred by the employee in the course of his or her employment and section 1194[4] requires an *employer* to pay the legal minimum wage. These statutes cannot serve as the statutory predicate for Arreola's UCL claim based on the "unlawful" prong of the UCL because here, as in *Aleksick*, the relied upon statutes apply only to an employment relationship, not to an independent contractor relationship.

In his opening brief, Arreola argues that notwithstanding the independent contractor nature of his relationship with One More Productions, he was entitled to an award of restitution because it was unfair that he was not paid for his carpentry services. In *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173, however, the California Supreme Court explained that "[a] UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business *practices*. It is not an all-purpose substitute for a tort or contract action. '[D]amages are not available under [Business and Professions Code] section 17203. [Citations.]'" (Italics added.)

At oral argument, citing *Cortez v. Purolator Air Filtration Products Co.*, *supra*, 23 Cal.4th 163, Arreola's counsel argued Arreola had a vested right in the amount owed by One More Productions for which restitution is available under the UCL. In *Cortez*, the California Supreme Court held that "orders for payment of wages unlawfully

---

[3] Labor Code section 2802, subdivision (a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

[4] Labor Code section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

16

withheld from an employee are also a restitutionary remedy authorized by [Business and Professions Code] section 17203." (*Cortez v. Purolator Air Filtration Products Co.*, *supra*, at p. 177.) *Cortez* did not address the independent contractor relationship.

Arreola has failed to show the trial court had any authority to award him restitution under the UCL because he has failed to demonstrate One More Productions had engaged in an unfair business *practice*. Instead, Arreola's claim is based on One More Productions's failure to pay Arreola the amount of money he contends it had agreed he would be paid. Although Arreola's claim is essentially based on a breach of the parties' agreement, Arreola did not assert a breach of contract claim in his lawsuit. The complaint contained a claim for quantum meruit, but that claim was dismissed as barred by the applicable statute of limitations; Arreola does not challenge the dismissal of that claim in this appeal.

Therefore, the trial court properly vacated the judgment awarding Arreola restitution under the UCL and entered a new judgment in favor of One More Productions.

II.

ONE MORE PRODUCTIONS'S CROSS-APPEAL

One More Productions filed a motion in which it sought to recover $27,265 in attorney fees under Labor Code former section 218.5, which provided in part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Significant to this case, former section 218.5 also provided: "This section does not apply to any action for which attorney's fees are recoverable under Section 1194."[5]

_____

[5] Effective January 1, 2014, Labor Code former section 218.5 was amended to provide that when the prevailing party is not an employee, an award of attorney fees and

17

Because both the complaint and the answer, filed in this case, requested an award of attorney fees and costs, we next consider whether this action was brought for "nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions" within the meaning of Labor Code former section 218.5. We conclude it was not.

The complaint contained three causes of action that arguably seek recovery for the nonpayment of wages. The first cause of action was expressly based on One More Productions's alleged failure to pay the minimum wage and overtime compensation in violation of Labor Code section 1194, a claim which is expressly carved out of Labor Code former section 218.5's prevailing party attorney fees provision. The second and seventh causes of action, for violation of the UCL and quantum meruit, respectively, simply incorporate by reference the general allegations of the complaint, which state that One More Productions failed to pay the minimum wage and overtime compensation within the meaning of section 1194, and also failed to promptly indemnify Arreola for expenses in violation of Labor Code section 2802; seeking indemnification for expenses does not seek recovery for the nonpayment of wages or benefits. Those two causes of action, therefore, are excluded from the prevailing party attorney fee provision of former section 218.5.

The remaining third, fourth, fifth and sixth causes of action in the complaint were based on One More Productions's alleged failure to provide required meal and rest periods, expense reimbursements, untimely payment of wages following the termination of employment, and accurate wage statements, respectively. None of those causes of action was "brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions" within the meaning of Labor Code former section 218.5. (See *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1255 [claim for

costs is contingent on a finding by the court that the employee brought the court action in bad faith.

18

failure to provide meal and rest breaks in violation of Labor Code section 226.7 is not a claim "brought for the nonpayment of wages" within the meaning of former section 218.5].)

The trial court, therefore, did not err by denying One More Productions's motion for prevailing party attorney fees under Labor Code former section 218.5.

## DISPOSITION

The judgment and postjudgment order are affirmed.  As each party prevailed in part, and in the interests of justice, no party shall recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.